NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0433n.06

Nos. 08-3822 and 08-3823

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 25, 2009
LEONARD GREEN, Clerk

ABS INDUSTRIES, INC., a Delaware Corporation, by
and through the ABS Litigation Trust,

    Plaintiff-Appellant,

v.

FIFTH THIRD BANK; BAL GLOBAL FINANCE,
LLC, cp Bank of America Corporation,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

BEFORE: GUY, ROGERS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

In this diversity action alleging breach of a credit agreement, plaintiff ABS Industries, Inc.

("ABS") appeals the district court's judgment dismissing its first amended complaint against

defendants Fifth Third Bank ("Fifth Third") and BAL Global Finance, LLC ("BAL") on the ground

that it was barred by the doctrine of res judicata. ABS also appeals the district court's denial of its

motion for leave to file a second amended complaint pursuant to Federal Rule of Civil Procedure

15(a)(2). We affirm.

I.

ABS sets forth the following germane facts in its first amended complaint. ABS was the

parent holding company of two now-defunct auto-parts suppliers, Colfor, Inc. ("Colfor"), and

Colmach, Inc. ("Colmach"), both Ohio corporations.  During the period from 1977 through 1995, ABS and its two wholly-owned subsidiaries were in fundamentally sound financial condition.  In October 1994, Colfor entered into a Credit Agreement (the "Agreement") with Fifth Third, Sanwa Business Credit Corporation ("Sanwa"),[1] and National City Bank ("NCB") (collectively referred to as the "Lenders").  The Agreement appointed NCB as "the lead and agent bank."  Colfor's obligations were guaranteed by ABS and Colmach.  Pursuant to the Agreement, governed by Ohio law, the Lenders issued loans and advances to Colfor according to a formula that incorporated percentages of Colfor's accounts receivable, raw materials, and finished goods inventory.

In November 1995, with Colfor and Colmach in default under the Agreement, the parties entered into a forbearance agreement, pursuant to which ABS and its subsidiaries consented, *inter alia*, to "provide the [Lenders] with a complete release of all liability associated with all debt," and, in exchange, the Lenders agreed "to forbear from exercising their rights and remedies with respect to the Existing Defaults until January 16, 1996 (The 'Forbearance Termination Date')[.]"

In February 1996, after the forbearance agreement expired, the Lenders commenced involuntary Chapter 11 bankruptcy proceedings against Colfor and Colmach in the United States Bankruptcy Court for the Northern District of Ohio.  *See In re Colfor, Inc.*, No. 96-60306, 1996 WL 628057 (Bankr. N.D. Ohio Sept. 18, 1996).  The bankruptcy court granted the Lenders' uncontested petitions, entered orders for relief, and ultimately authorized the sale of substantially all of the subsidiaries' assets to Cerberus Partners, L.P.  The remaining assets were liquidated for the benefit

---

[1]BAL is the successor corporation to Sanwa.

of creditors. The Chapter 11 plan confirmed by the bankruptcy court in December 1998 extinguished any equity interest that ABS formerly owned in its subsidiaries.

On July 27, 1998, ABS and two of its officers filed a complaint in Ohio state court against NCB and other defendants, alleging negligence, breach of contract, breach of trust, breach of fiduciary duty, and tortious interference with contractual and business relationships. *McCarthy v. Ernst & Young*, No. 98-CV-477 (Ohio C.P. Ashtabula County) (hereinafter the "Ashtabula case or complaint"). Similar to ABS's current allegations against Fifth Third and BAL, ABS's allegations against NCB in the Ashtabula case involved NCB's actions as lead and agent bank for the Lenders in the transactions, including the Agreement, leading up to the bankruptcies of Colfor and Colmach. On June 21, 2000, pursuant to ABS's request, the state court dismissed with prejudice ABS's claims against NCB in the Ashtabula case.

Seven years later, on May 8, 2007, ABS filed the present action in federal court against Fifth Third and BAL, alleging a single count of breach of the Agreement. Defendants moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ABS then filed a first amended complaint, again alleging one count of breach of contract arising from the terms of the Agreement.[2]

---

[2]The first amended complaint alleges that defendants breached the Agreement by requiring that ABS prepare and maintain two sets of books (one to be used for lending to ABS and the second for preparing its audited financial statements); insisting that ABS not prepare its borrowing base reports according to generally accepted accounting principles; and forcing ABS to misclassify eligible receivables as finished goods for the purpose of reducing the borrowing base.

Pertinent to this appeal, ABS alleges repeatedly in its first amended complaint that NCB acted as defendants' agent in transactions related to the Agreement. For instance, ABS avers that "when [Fifth Third] and Sanwa filed involuntary bankruptcy petitions against Colfor and Colmach, *the lead and agent bank in their syndicate (NCB)* had been in a lending relationship with ABS, Colfor and Colmach for a number of years"; that pursuant to the Agreement, ABS and Colmach "were required to execute and deliver to NCB as the Defendants' agent a guarantee of payment . . . to each bank"; that under the Agreement, "each bank irrevocably appointed NCB as its agent with full authority to take such actions, and exercise such powers, on behalf of the banks in connection with the Agreement as are delegated to NCB or as are reasonably incidental to those delegated powers"; that "[a]t all relevant times, NCB acted as the actual and apparent agent for [Fifth Third] and Sanwa, and they are therefore bound by all actions taken by NCB as their principal"; and that "ABS did not know and could not have anticipated that the Defendants, acting by and through their agent NCB, would take the actions which they subsequently did and which directly and proximately led to the damages sustained."

Defendants again filed a joint motion to dismiss the first amended complaint pursuant to Rule 12(b)(6) on several grounds, including res judicata. They argued that the complaint was barred by res judicata because ABS's voluntary dismissal with prejudice of its Ashtabula complaint against NCB constituted a final, valid decision on the merits by a court of competent jurisdiction; the federal action involved the same parties, or their privies, as the Ashtabula case; the federal action raised

claims that were or could have been litigated in the Ashtabula case; and the federal suit arose out of the same transaction or occurrence that was the subject matter of the Ashtabula complaint.

Defendants' motion prompted ABS to file a motion for leave to file a second amended complaint pursuant to Federal Rule of Civil Procedure 15(a). Through this motion, ABS sought to "more precisely address the relationship between these Defendants and NCB." Specifically, ABS stated that it would "exchange the existing, broader and inaccurate allegations of the complaint [regarding the relationship between NCB and defendants] with the more precise analysis set forth in its opposition to the Defendants' Motion to Dismiss." Defendants opposed ABS's motion for leave to amend, arguing that granting the motion would allow ABS to contradict its own allegations, that ABS failed to attach a proposed amended complaint, and that any proposed amendment would be futile.

On May 23, 2008, the district court granted defendants' joint motion to dismiss the first amended complaint on res judicata grounds, holding that the valid judgment on the merits against NCB in the Ashtabula case barred ABS's current complaint against Fifth Third and BAL, who were in privity with NCB. *ABS Industries, Inc. v. Fifth Third Bank*, No. 3:07-CU-1339, 2008 WL 2185378 at *4 (N.D. Ohio May 23, 2008). In so concluding, the district court rejected ABS's assertion that NCB was not an agent for defendants in the underlying transactions, pointing out ABS's about-face attempt to retract its allegations of agency. *Id*. at *3. The district court observed that litigation stemming from the underlying transactions had been ongoing for nearly a decade, during which time ABS repeatedly and consistently alleged that NCB was defendant's agent and

"only when confronted with adverse legal authority that would result in dismissal of its suit has ABS attempted to alter its long-held position." *Id*. Consequently, the court did "not permit ABS to change stride in the middle of this litigation and disavow the allegations of its own complaint solely to survive a motion to dismiss." *Id*.

For the same reason, the district court denied ABS's motion for leave to file a second amended complaint, finding that the proposed amendment would contradict ABS's initial allegations and was offered purely for tactical reasons. *Id*. at *2-*3. Noting that Federal Rule of Civil Procedure 11(b) requires that counsel have a good faith belief in the allegations of the complaint prior to filing it, the district court found "no merit in ABS' contention that it should be permitted to correct its 'inaccurate allegations' of agency." *Id*. at *4. The court therefore entered judgment in favor of defendants and dismissed the action. *Id*. ABS now timely appeals.

II.

ABS argues that the district court erred in dismissing its first amended complaint on res judicata grounds. We disagree.

We review de novo the district court's order granting defendants' Rule 12(b)(6) motion to dismiss. *Zaluski v. United Am. Healthcare Corp*., 527 F.3d 564, 570 (6th Cir. 2008). To survive a Rule 12(b)(6) motion, "the nonmoving party must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing

a motion to dismiss, we treat all factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera*, 551 F.3d at 466. We review de novo the district court's application of res judicata, with the party asserting the defense bearing the burden of proof. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008).

"[W]e must give the same preclusive effect, under the doctrines of res judicata and collateral estoppel, to state court judgments that those judgments would receive in courts of the rendering state." *Ingram v. City of Columbus*, 185 F.3d 579, 593 (6th Cir. 1999). "[I]f an individual is precluded from litigating a suit in state court by the traditional principles of res judicata, he is similarly precluded from litigating the suit in federal court." *Gutierrez v. Lynch*, 826 F.2d 1534, 1537 (6th Cir. 1987) (footnote omitted). We look to the state's law to assess the preclusive effect it would attach to that judgment. *Id*.; *Ingram*, 185 F.3d at 593.

Under Ohio law, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 653 N.E.2d 226, 229 (Ohio 1995) (citing Restatement (Second) of Judgments §§ 24-25 (1982)). Claim preclusion consists of four elements: "'(1) [A] prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.'" *Portage County Bd. of Comm'rs v. City of Akron*, 846 N.E.2d 478, 495 (Ohio 2006) (quoting *Hapgood v. Warren*, 127

F.3d 490, 493 (6th Cir. 1997)). Thus, "[r]es judicata operates as a complete bar to any subsequent

action on the same claim or cause of action *between the parties or those in privity with them*."

*Brown v. City of Dayton*, 730 N.E.2d 958, 961 (Ohio 2000) (citations and internal quotation marks

omitted).

In the present case, only the element of privity – between Fifth Third, BAL and NCB – is at

issue. ABS does not challenge the existence of the other components of res judicata.[3] Regarding

the privity requirement, the Supreme Court of Ohio observed in *Brown* that:

> What constitutes privity in the context of *res judicata* is somewhat amorphous. A
> contractual or beneficiary relationship is not required:
>
> In certain situations . . . a broader definition of "privity" is warranted. As a general
> matter, privity is merely a word used to say that the relationship between the one who
> is a party on the record and another is close enough to include that other within the
> *res judicata*.
>
> We find that a mutuality of interest, including an identity of desired result, creates
> privity between [parties for res judicata purposes].

---

[3]It is undisputed that under Ohio law, ABS's dismissal with prejudice of NCB in the Ashtabula case constitutes a decision on the merits. *See Tower City Prop. v. Cuyahoga County Bd. of Revision*, 551 N.E.2d 122, 124 (Ohio 1990) ("If the dismissal is with prejudice, the dismissed action in effect has been adjudicated upon the merits, and an action based on or including the same claim may not be retried. Thus, an action dismissed 'with prejudice' is vulnerable to the defense of *res judicata*.") (citations and emphasis omitted); *Hempstead v. Cleveland Bd. of Ed.*, No. 90955, 2008 WL 4599644, at *2 (Ohio Ct. App. Oct. 16, 2008) ("In Ohio, a dismissal with prejudice is a final judgment for purposes of res judicata."). Moreover, ABS does not contest the district court's conclusions that the underlying facts alleged in the state and federal complaints are virtually identical and arise from a "'common nucleus of operative facts,'" *see Grava*, 653 N.E.2d at 229 (quoting Restatement (Second) of Judgments § 24 cmt. b (1982)), or that the federal action raises claims that were or could have been litigated in the Ashtabula case.

*Brown*, 730 N.E.2d at 962 (citations and internal quotation marks omitted).

Privity is defined alternatively by the Ohio courts as "such an identification of interest of one person with another as to represent the same legal right." *Elec. Enlightenment, Inc. v. Kirsch*, No. 23916, 2008 WL 2814327, at *2 (Ohio Ct. App. July 23, 2008) (citations and internal quotation marks omitted). Mutuality of interest "exists only if the person taking advantage of the judgment would have been bound by it had the result been the opposite. Conversely, a stranger to the prior judgment, being not bound thereby, is not entitled to rely upon its effect under the claim of *res judicata* or collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.*, 862 N.E.2d 803, 806 (Ohio 2007) (citation omitted).

As the *Brown* court concluded, privity does not require a contractual relationship, although it is well settled that a principal-agent relationship satisfies the privity requirement of res judicata where the claims alleged are within the scope of the agency relationship.[4] *See Cook v. Criminger*, No. 22313, 2005 WL 957023, at *5 (Ohio Ct. App. Apr. 27, 2005) (holding that res judicata precluded consideration of state claims against individual university employees based on the same conduct that formed the basis for prior federal claims resolved in favor of the state university because

---

[4]"An 'agency relationship' is defined [by Ohio's courts] as 'a consensual fiduciary relationship between two persons where the agent has the power to bind the principal by his actions, and the principal has the right to control the actions of the agent.'" *Evans v. Ohio State Univ.*, 680 N.E.2d 161, 174 (Ohio Ct. App. 1996) (citations omitted). "[T]o show such an agency, a plaintiff must establish: '(1) That the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.'" *Id.* (quoting *Logsdon v. ABCO Constr. Co.*, 141 N.E.2d 216, 223 (Ohio Ct. App. 1956)).

the state action concerned the employees' actions as agents of the university and hence established

privity); *Waddell v. Boldman*, No. 01CA721, 2002 WL 1897320, at *3 (Ohio Ct. App. Aug. 14,

2002) (holding that the defendant contractual employee was in privity with the plaintiff's former

husband, through an agency relationship, and thus, a prior divorce action resolving issues regarding

the timbering of land had res judicata effect against the plaintiff in her subsequent action alleging

that the defendant cut timber on the land without authorization); *Transcontinental Ins. Co. v.*

*Edgewood Golf & Swim Club, Inc.*, No. CA-8795, 1992 WL 195453, at *2 (Ohio Ct. App. July 20,

1992) (holding that res judicata precluded action by the plaintiff insurance company to collect an

unpaid premium, where a prior action to collect an unpaid balance brought by the plaintiff's agent

against the same defendant was settled and dismissed with prejudice, both balances were owing prior

to the commencement of the original action, and the agent had the apparent authority to collect both

balances).[5]

     ABS argues that, although both its first amended complaint and the Agreement describe NCB

---

[5]The federal courts have similarly held that an agency relationship may constitute grounds for application of res judicata. *See*, *e.g.*, *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1288 (5th Cir. 1989) ("Where a plaintiff has sued parties in serial litigation over the same transaction; where plaintiff chose the original forum and had the opportunity to raise all its claims relating to the disputed transaction in the first cause of action; where there was a 'special relationship' between the defendants in each action, if not complete identity of the parties; and where although the prior action was concluded, the plaintiff's later suit continued to seek essentially similar relief – the courts have denied the plaintiff a second bite of the apple."); *Fiumara v. Fireman's Fund Ins. Co.*, 746 F.2d 87 (1st Cir. 1984) (finding privity for res judicata purposes between agent and principal); *Spector v. El Rancho, Inc.*, 263 F.2d 143, 145 (9th Cir. 1959) ("Where, as here, the relations between two parties are analogous to that principal and agent, the rule is that a judgment in favor of either, in an action brought by a third party, rendered upon a ground equally applicable to both, is to be accepted as conclusive against the plaintiff's right of action against the other.").

as defendants' "agent," careful review of the terms of the Agreement demonstrates that the Lenders "did not intend that NCB would function as an agent in the legal sense," as defined by the Restatement (Third) of Agency (2006). The Restatement defines agency as "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006). The Restatement also recognizes that "[w]hether a relationship is characterized as agency in an agreement between parties or in the context of industry or popular usage is not controlling." *Id*. at § 1.02.

ABS contends that the Agreement expressly disclaims the creation of any fiduciary relationship and any intention that NCB, the "agent," be subject to the control of the Lenders.[6] Consequently, according to ABS, NCB did not owe a fiduciary duty to defendants, was not acting as a manager regarding any aspect of the loans, and therefore was not defendants' true agent so as to establish privity for res judicata purposes.

Although, as ABS argues, sophisticated loan transactions such as the Agreement must be examined closely to determine the existence of a fiduciary or agency relationship, *cf. First Citizens Fed. Sav. & Loan Ass'n v. Worthen Bank & Trust Co.*, 919 F.2d 510, 514 (9th Cir. 1990) (opining

---

[6]The Agreement provides in § 7B.01 that "NCB-Agent shall have no fiduciary relationship with any bank by reason of this Agreement and the related writings[.]" This subsection further provides that "each bank acknowledges that NCB-Agent is acting as such solely as a convenience to the banks and not as a manager of the subject commitments or subject indebtedness."

that "[i]n the context of loan participation agreements among . . . lending institutions, . . . fiduciary relationships should not be inferred absent unequivocal contractual language"), we must, under the circumstances, reject ABS's attempt to suddenly disavow NCB's role as defendants' agent for the reasons expressed by the district court. As the court properly concluded, ABS's argument is "not well taken" given its unambiguous allegations in its original and first amended complaints that NCB acted as defendants' "agent" in transactions involving the same Agreement, the same borrowers, and the same shared mutual interests and desired results, namely, Colfor's and Colmach's performance under the Agreement. The terms of the Agreement, attached as an exhibit to the first amended complaint, support the district court's ruling that privity existed.[7] They provide in pertinent part:

> 7B.     NCB-AGENT – Each bank irrevocably appoints NCB to be its agent (in that capacity, <u>NCB-Agent</u>) with full authority to take such actions, and to exercise such powers, on behalf of the banks in respect of this Agreement and the related writings as are therein respectively delegated to NCB-Agent or as are reasonably incidental to those delegated powers.
>
> 7B.01 NATURE OF APPOINTMENT – NCB-Agent shall have no fiduciary relationship with any bank by reason of this Agreement and the related writings, nor shall NCB-Agent have any duty or responsibility whatever to any bank EXCEPT those expressly set forth in this Agreement and the related writings. Without limiting the generality of the foregoing, each bank acknowledges that NCB-Agent is acting as such solely as a convenience to the banks and not as a manager of the subject commitments or subject indebtedness. This section 7B does not confer any rights upon Borrower or anyone else (EXCEPT the banks), whether as a third party beneficiary or otherwise.

---

[7]"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990)).

7B.02 NCB AS A BANK; OTHER TRANSACTIONS – NCB's rights under this Agreement and the related writings shall not be affected by its serving as NCB-Agent. NCB and its affiliates may generally transact any banking, financial, trust, advisory or other business with the companies (including, without limitation, the acceptance of deposits, the extension of credit and acceptance of fiduciary appointments) without notice to the banks, without accounting to the banks, and without prejudice to NCB's rights as a bank under this Agreement and the related writings.

7B.03 INSTRUCTION FROM BANKS – NCB-Agent shall not be required to exercise any discretion or take any action as to matters not expressly provided for by this Agreement and the related writings . . . EXCEPT that NCB-Agent shall take such action (or omit to take such action) as may be reasonably requested of it in writing by a majority of the banks, which instructions and which actions and omissions shall be binding upon all the banks; PROVIDED, that NCB-Agent shall not be required to act (or omit any act) if, in its judgment, any such action or omission might expose NCB-Agent to personal liability or might be contrary to this Agreement, any related writing or any applicable law.

Given ABS's explicit allegations of agency in its complaint and the specific language of the Agreement, which also supports the existence of an agency relationship as defined by Ohio law between NCB and defendants, ABS's attempt to repudiate its allegations that NCB was not acting as defendants' agent rings hollow, and its argument that there was no privity between NCB and defendants is without merit. The broad disclaimer of certain fiduciary duties in the Agreement, now relied upon by ABS, was not pled in either ABS's original or first amended complaints and, in any event, does not change our conclusion that privity existed between NCB and defendants for res judicata purposes.[8]

---

[8]ABS neglects to mention that the Restatement (Third) of Agency § 1.01 cmt. e (2006) further provides that "[t]o establish that a relationship is one of agency, it is not necessary to prove its fiduciary character as an element" because "the term 'fiduciary' [broadly] signifies that an agent must act loyally in the principal's interest as well as on the principal's behalf" and "does not explain

Even assuming arguendo that rather than an agency relationship, the Agreement "establish[ed] a complicated structure of mutual authority," *Park Bank v. Coulee State Bank*, 619 N.W.2d 308, 2000 WL 1292683, at *2 (Wis. App. Sept. 14, 2000) (unpublished table opinion), NCB and defendants shared a mutuality of interest sufficient to warrant the application of res judicata to this case under the broad definition of privity recognized by Ohio's courts.

Thus, we conclude that the district court did not err in dismissing ABS's cause of action on res judicata grounds. Under the circumstances, ABS is not entitled to a "second bite at the apple" against these defendants. *Lubrizol Corp.*, 871 F.2d at 1288.

III.

ABS's attempt to salvage its case by amending its complaint – "to more precisely address the relationship between these Defendants and NCB" and "to exchange the existing, broader and inaccurate allegations of the complaint with the more precise analysis [of agency] set forth in its opposition to the Defendants' Motion to Dismiss" – is too little, too late.

While a court "'should freely give leave when justice so requires,' the right to amend is not absolute or automatic." *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 551 (6th Cir. 2008) (quoting FED. R. CIV. P. 15(a)(2)) (citations omitted). Thus, we have affirmed a district court's decision dismissing the plaintiffs' complaint without leave to amend where the proposed amendment would have been futile because the plaintiffs' claims were dismissed on res judicata grounds, *Winget*, 537 F.3d at 572-73, and when allowance of the amendment would result in undue prejudice to a

all of the legal consequences that stem from the relationship."

defendant. *See Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 970-71 (6th Cir. 1973) (affirming denial of leave to amend complaint where the plaintiff could have presented its alternative theory of recovery in the initial complaint on the basis that "[a] misconception of the law is not an excuse for the late presentation of an alternative theory of recovery"); *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1325 (Fed. Cir. 1998) (affirming district court's denial of the plaintiff's motion to amend complaint for a second time because "the new pleadings exceeded [the] permissible adjustment of factual allegations" and "[t]he allegations were changed in material ways that were not adequately explained").

In light of our determination that res judicata applies to bar ABS's action, we also hold that further amendment of ABS's complaint would be futile. As the district court recognized, through its proposed amendments, ABS engages in a thinly veiled tactical maneuver to essentially refute its prior allegations regarding the nature of the relationship between NCB, Fifth Third, and BAL – an about-face that would unfairly prejudice defendants and that calls into question ABS's compliance with Federal Rule of Civil Procedure 11(b), which requires that pleadings submitted to the court be nonfrivolous and made in good faith. Litigation surrounding the issue of agency has been ongoing since the Ashtabula case was filed in 1998. Although ABS now claims to have undertaken "further analysis of the Credit Agreement" and the applicable law, this information was available during the Ashtabula case and when ABS filed its first two complaints in the present action.

Under the circumstances, the district court did not abuse its discretion in denying ABS's motion for leave to file a second amended complaint.

IV.

The judgment of the district court is affirmed.