NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0341n.06

No. 11-4025

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Apr 05, 2013*
DEBORAH S. HUNT, Clerk

COLLEEN CARROLL, individually and on behalf of ) 
all others similarly situated; SHEILA M. MCCARTHY ) 
AND PATRICK J. MCCARTHY, Executors of the ) 
Estate of Daniel R. McCarthy, Deceased, ) 
                                 ) 
        Plaintiffs-Appellants, ) 
                                   ) 
v. )   On Appeal from the United States 
                                   )   District Court for the Northern 
CITY OF CLEVELAND, )   District of Ohio 
                                   ) 
        Defendant-Appellee. )

Before:         BOGGS and WHITE, Circuit Judges; and BLACK,[*] District Judge.

        BOGGS, Circuit Judge. Daniel McCarthy and Colleen Carroll received traffic citations from automated cameras that the City of Cleveland put in place, pursuant to a newly passed ordinance. Both paid their fines, admitting liability for their offenses. Both, however, had leased their cars. They were not vehicle owners and thus, as an Ohio appellate court later determined, they could not be fined under the ordinance. McCarthy and Carroll filed this class-action lawsuit in state court. The fines that the City collected, they alleged, were unconstitutional takings under state and federal law. The City removed to federal court. After a set of adverse decisions on their federal takings claims, in district court and on appeal, McCarthy and Carroll returned to state court and amended

---

        [*] The Hon. Timothy S. Black, United States District Judge for the Southern District of Ohio, sitting by designation.

their pleadings, adding federal and state due-process claims. Again, the city removed to federal court. This time, the district court dismissed on claim-preclusion grounds. It reasoned that, because Appellants paid their fines without asserting their current claims, this subsequent suit is barred. For the reasons that follow, we affirm.

I

In 2005, the City of Cleveland began using automated cameras to photograph vehicles that were speeding or running a red light. The owner of the vehicle photographed would receive a notice of liability,[1] and could choose either to pay a fine or to file an appeal. Paying the fine constituted an admission of liability. Likewise, failure to indicate an intent to appeal within twenty-one days "constitute[d] a waiver of the right to contest the ticket and [was] considered an admission [of liability]." CCO 413.031(k). The ordinance provided that appeals would "be heard by the Parking Violations Bureau through an administrative process established by the Clerk of the Cleveland Municipal Court." *Ibid.* An owner unsatisfied with the outcome could pursue the matter further in the Court of Common Pleas. Ohio Rev. Code 2506.01(A). When reviewing an administrative decision under § 2506, that court has the power to "determine[] whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." *Dickson & Campbell, L.L.C. v. City of Cleveland*,

---

[1] The implementing ordinance provided: "This civil enforcement system imposes monetary liability." CLEVELAND CODIFIED ORDINANCE 413.031(a) [hereinafter CCO]. By its terms, liability for a traffic violation under the ordinance "shall not be deemed a conviction for any purpose and shall not be made part of the operating record of any person on whom the liability is imposed." *Id.* at 413.031(d).

No. 11-4025
*Carroll, et al. v. City of Cleveland*

908 N.E.2d 964, 966 (Ohio Ct. App. 2009) (quoting *Henley v. Youngstown Bd. of Zoning Appeals*,

735 N.E.2d 433, 438 (Ohio 2000)).

In February 2009, a panel of the Ohio Court of Appeals held that the City could not issue a

notice of liability to a lessee, as the ordinance dealt only with vehicle owners. *Id.* at 968–71. Three

months later, Appellants Daniel McCarthy and Colleen Carroll filed this class-action lawsuit in state

court. Like the *Dickson & Campbell* plaintiffs, McCarthy and Carroll had both received notices of

liability from the City for traffic violations photographed by an automated camera.[2] Like the *Dickson*

*& Campbell* plaintiffs, McCarthy and Carroll were lessees, not owners, of their vehicles. But unlike

the *Dickson & Campbell* plaintiffs, McCarthy and Carroll paid their fines, rather than contesting their

citations through the appellate process that the ordinance provided.

Appellants' state-court complaint alleged that the fines levied against them, and all other

vehicle lessees who paid citations for traffic offenses captured by the automated cameras, violated

the Takings Clause of the United States and Ohio Constitutions, U.S. Const. amend. V.; Ohio Const.

art. I, § 19, and constituted unjust enrichment under Ohio law. Appellants also sought a writ of

mandamus for a hearing in front of an administrative officer and a judgment declaring enforcement

of the ordinance against lessees unconstitutional. The City removed the case to the United States

District Court for the Northern District of Ohio. The district court dismissed, reasoning that

Appellants could not state a takings claim because they paid their fines voluntarily, after being

---

[2] McCarthy received notices of liability for traffic violations on February 23, 2009, and March 3, 2009. Carroll received notices of liability for traffic violations on March 23, 2007, and August 15, 2007.

- 3 -

afforded due process. *McCarthy v. City of Cleveland*, No. 1:09–CV–1298, 2009 WL 2424296, at *4 (N.D. Ohio Aug. 6, 2009). We affirmed the district court's dismissal of Appellants' federal claims because the money allegedly taken did not come from an identifiable fund. *McCarthy v. City of Cleveland*, 626 F.3d 280, 286 (6th Cir. 2010). We remanded for further consideration of Appellants' state-law claims, however, because the Ohio Takings Clause is not necessarily coextensive with the federal Takings Clause. *Id.* at 287. Judge McKeague concurred separately, agreeing with the majority opinion in its entirety, but adding that Appellants' federal takings claims also failed because Appellants "did not exhaust the process available to them and did not obtain a final decision on any appeal." *Id.* at 288.

On remand, the district court declined to exercise supplemental jurisdiction and remanded to Ohio state court. There, Appellants amended their complaint, adding federal and state substantive-due-process and procedural-due-process claims. The City again removed. This time, the district court ordered preliminary briefing on "Rooker-Feldman, Res Judicata, Exhaustion and all other jurisdictional issues." After receiving the parties' submissions, the district court "determine[d] that [Appellants'] claims are precluded by *res judicata*." *McCarthy v. City of Cleveland*, No. 1:11-CV-1122, 2011 WL 4383206, at *1 (N.D. Ohio Sept. 20, 2011). Had Appellants contested their citations, rather than paying their fines, the district court reasoned, they eventually could have presented all of the arguments that they pressed below. *Id.* at *2–*5. Because Appellants did not appeal through the administrative process that the ordinance offered, they lost the opportunity to make their claims.

No. 11-4025
*Carroll, et al. v. City of Cleveland*

II

At the outset, it is not clear which provision of the Federal Rules of Civil Procedure the district court used to dismiss Appellants' claim. The parties appear to suggest that we should treat the decision below as a Rule 12(b)(6) dismissal. *See* Appellants' Br. 11; Appellee's Br. 10. Appellees, though, never moved to dismiss under Rule 12(b)(6), and the district court did not rely on Rule 12(b)(6) in reaching its decision.[3] Under these circumstances, the analytically better approach is to treat the decision as a dismissal under Rule 12(c), which allows a party to move for judgment on the pleadings, "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The difference, however, is purely aesthetic: "We review de novo a district court's application of the doctrine of res judicata," *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) (quoting *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009)), and apply "the same *de novo* standard applicable to a motion to dismiss under Rule 12(b)(6)" to a Rule 12(c) motion for judgment on the pleadings. *Keymarket of Ohio, LLC v. Keller*, No. 10–3294, 2012 WL 2086939, at *3 (6th Cir. Jun. 8, 2012).

Thus, we apply our familiar motion-to-dismiss standard, construing the record in the light most favorable to the non-moving party and accepting as true all well-pleaded allegations in the complaint. *Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 845 (6th Cir. 2007). In this examination, we need not credit "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "[A] plaintiff's obligation to provide the 'grounds'

---

[3] Instead, the district court's "Legal Standard" section dealt only with the elements of *res judicata*.

of his 'entitlement to relief, requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alterations omitted). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts of the complaint do not meet this threshold, dismissal is proper.

## III

We give a state-court judgment or decree the same preclusive effect that it would have in the rendering state's courts. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011); *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997). This, of course, is a question of state law. We therefore examine Ohio law to determine whether *res judicata* bars Appellants' action. *Migra*, 465 U.S. at 81 ("[T]he preclusive effect in federal court of petitioner's state-court judgment is determined by Ohio law.").

In Ohio, *res judicata* comprises two discrete doctrines: claim preclusion and issue preclusion. *Grava v. Parkman Twp.*, 653 N.E.2d 226, 228 (Ohio 1995). The former makes "an existing final judgment or decree between the parties to litigation . . . conclusive as to all claims which were or might have been litigated in a first lawsuit," *Nat'l Amusements, Inc. v. City of Springdale*, 558 N.E.2d 1178, 1180 (Ohio 1990) (internal quotation omitted); the latter "precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action which was based on a different cause of action." *Whitehead v. Gen. Tel. Co.*, 254 N.E.2d 10, 13 (Ohio 1969).

Although the parties discuss both species of *res judicata*, claim preclusion is the linchpin of this case. Under Ohio law, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava*, 653 N.E.2d at 229. From this holding, we have distilled four elements:

> (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*Hapgood*, 127 F.3d at 493. If a case meets each of these criteria, claim preclusion "extinguishes the plaintiff's claim . . . the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all, or any part of the transaction or series of connected transactions, out of which the action arose." *Grava*, 653 N.E.2d at 229. "The party asserting [claim preclusion] bears the burden of proof." *Boggs*, 655 F.3d at 520.

At the threshold, and contrary to Appellants' argument, claim preclusion "is . . . applicable to actions which have been reviewed before an administrative body, in which there has been no appeal made pursuant to R.C. 2506.01." *Wade v. City of Cleveland*, 456 N.E.2d 829, 831–32 (Ohio Ct. App. 1982). As Appellants note, there was never an administrative hearing in this case. But, as discussed below, the reason that Appellants did not receive a hearing is that they admitted their offenses by paying their fines. Just as claim preclusion applies to a party who settles a civil case and later attempts to litigate claims that she could have pursued in the case that she settled, so too does it apply to Appellants who, instead of contesting their citations, conceded civil liability by paying

their fines. *See* CCO 413.031(a) (defining automated-camera system as "civil enforcement system").

Thus, if the City carries its burden to show that it meets the four elements of claim preclusion,

Appellants' suit may not proceed.

We move, therefore, to the four-part analysis outlined above. Our first question is whether

there is a final judgment when a litigant admits liability by paying his traffic fine, and the City

accepts his payment. There is: "Generally, a consent judgment operates as *res adjudicata* to the

same extent as a judgment on the merits." *Horne v. Woolever*, 163 N.E.2d 378, 382 (Ohio 1959).

The preclusive effect of a final judgment, in other words, "does not change simply because the

parties resolved the claim without vigorously controverted proceedings." *Scott v. City of East*

*Cleveland*, 476 N.E.2d 710, 713 (Ohio Ct. App. 1984). This is so both when the prior proceeding

was in court, *see generally Woolever*, 163 N.E.2d 378, and when the prior proceeding was a quasi-

judicial administrative process, *see generally Scott*, 476 N.E.2d at 713.

The citations that Appellants received clearly indicated that paying the fine, rather than

contesting the citation, was an admission of liability. Thus, by paying, each Appellant admitted that

he or she committed the alleged traffic violation, without asserting any defenses. Like a settlement

decree in a civil case, this qualifies as a final disposition. Appellees satisfy the first prerequisite for

the application of claim preclusion.

Appellants urge a contrary conclusion. They argue that, "because there was no hearing, no

evidence present [sic] and no factual findings made, there was no valid decision by a court of

competent jurisdiction." Appellants' Br. 19. This argument ignores the nature of Appellants'

admission. Had they chosen to contest the citations, Appellants would have received ample

opportunity to develop the facts surrounding their citations and to present their arguments about the statute's constitutionality, first in an administrative proceeding, then in the Ohio court system. Instead of chancing litigation, Appellants admitted liability and paid their fines. They may not escape claim preclusion now "simply because the[y] . . . resolved the claim without vigorously controverted proceedings." *Scott*, 476 N.E.2d at 713. Payment of the fines, and acceptance of that payment by the City, qualifies as a final judgment.

Without question, this action involves the same parties as the earlier traffic-citation action. We therefore proceed to the third element of the claim-preclusion analysis: whether this case raises claims that were, or could have been, litigated earlier. In Ohio, an administrative-hearing officer has somewhat limited powers. *See Evans v. Bd. of Educ. Southwestern City Sch. Dist.*, 425 F. App'x 432, 439 (6th Cir. 2011) ("[T]he . . . hearing officer was not empowered to consider L.E.'s constitutional or statutory claims."). Under § 2506.01, however, a party may appeal a quasi-judicial administrative determination to the court of common pleas, as a matter of right. That court, during the course of its review, "determines whether the administrative order [was] unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." *Dickson & Campbell, L.L.C.*, 908 N.E.2d at 966 (internal quotation marks omitted).

Appellants allege that the City's fining lessees violates: (1) the Ohio Constitution's Takings Clause; (2) the Ohio Constitution's guarantee of substantive due process; (3) the Ohio Constitution's guarantee of procedural due process; (4) the right to substantive due process secured by the United States Constitution; and (5) the right to procedural due process secured by the United States

Constitution. Although the administrative-hearing officer, under Ohio law, does not have the authority to resolve these constitutional claims, the court of common pleas certainly could, on review of the administrative decision. *Dickson & Campbell, L.L.C.*, 908 N.E.2d at 966. Thus, had Appellants taken advantage of the opportunity for judicial review that the ordinance offered, they could have asserted each of the claims they raise here.

Appellants' counter-argument has some intuitive appeal, but withers under close scrutiny. Claim preclusion does not apply, they reason, because they could have brought neither a claim for damages nor a facial challenge to the ordinance's constitutionality when appealing a (hypothetical) adverse administrative decision in the court of common pleas. Appellants are correct on both points. "Section 2506.01 does not empower state courts to award damages for injuries suffered as a result of erroneous administrative decisions," *Negin v. City of Mentor*, 601 F. Supp. 1502, 1505 (N.D. Ohio 1985), and a facial constitutional challenge to an ordinance is "inappropriate in an appeal brought pursuant to R.C. Chapter 2506." *Grossman v. City of Cleveland Heights*, 698 N.E.2d 76, 80 (Ohio Ct. App. 1997).

Neither of these principles, however, changes the outcome here. First, the only damages that Appellants seek are the fines that they paid. Had they successfully contested their citations in the first instance, they would not have owed anything. Had they failed, they would have owed precisely what they paid. The administrative process, in other words, could have afforded Appellants the very monetary relief they demand, had they taken advantage of it. *Compare Negin*, 601 F. Supp. at 1505 (allowing § 1983 claim to proceed because plaintiff sought "damages for *injuries suffered as a result of erroneous administrative decisions*" (emphasis added)), *with* Second Amended Compl. 7–11

(seeking, under counts one through five, "a return of the funds [paid], plus interest, to the Plaintiffs and the Class, plus reasonable attorney fees"), *and id.* at 12 (seeking disgorgement based on principles of restitution). True, Appellants hope to proceed as a class, and therefore seek the return of *many* motorists' money. But aggregation changes only the scope, not the nature, of Appellants' claims. At bottom, Appellants could have obtained precisely the "damages" they request had they availed themselves of the ordinance's appellate procedure.

Even so, Appellants might retort, the complaint sought attorney's fees and declaratory and injunctive relief, none of which is available in a § 2506 appeal. The trouble with this argument is twofold. First, a plaintiff pursuing an administrative appeal in Ohio need not limit herself to administrative claims. Rather, she may seek relief under *both* § 2506 *and* federal statutory law, as long as she follows the proper procedures. *See, e.g.*, *Krol v. Seven Hills City Council*, No. 88695, 2007 WL 2269465, at *2 (Ohio Ct. App. August 9, 2007) ("On April 27, 2005, appellants filed an appeal of the board's decision in the Cuyahoga County Court of Common Pleas pursuant to R.C. 2605.01. Appellants sought and were granted leave to amend their complaint to raise claims under the American with Disabilities Act, and the Rehabilitation Act of 1973." (internal citations omitted)); *Siemon v. Bailey*, No. 2002-CA-10, 2002 WL 1438678, at *8 (Ohio Ct. App. July 5, 2002) (noting that plaintiff's "complaint raises due process and equal protection violations, a violation of Section 1983, Title 42, U.S. Code, a request for injunctive relief, and an R.C. Chap. 2506 appeal from an administrative decision."). Second, "[t]he action authorized by R.C. 2506.01 is in the nature of an action for declaratory judgment." *Concerned Citizens of Spring Valley v. Spring Valley Twp. Bd. of Zoning Appeals*, No. 01 CA 0059, 2002 WL 191575, at *9 (Ohio Ct. App. Feb. 8, 2002); *see also*

*State ex rel. Pilarczyk v. Riverside*, No. Civ.A. 20706, 2005 WL 1714206, at *7 (Ohio Ct. App. July 22, 2005) ("The constitutionality of [an administrative decision] may be attacked and injunctive relief . . . obtained in a declaratory judgment action brought pursuant to R.C. Chapter 2506."). Appellants, therefore, could have obtained all of the relief that they seek here during the course of the § 2506 appeal that they chose not to pursue.

Second, while Appellants correctly note that a facial constitutional challenge is not available in a § 2506 proceeding, they do not, and cannot, maintain such a challenge here. "A facial challenge alleges that a statute, ordinance, or administrative rule, on its face and under all circumstances, has no rational relationship to a legitimate governmental purpose." *Wymsylo v. Bartec, Inc.*, 970 N.E.2d 898, 907 (Ohio 2012); *see also Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) ("[A] plaintiff can only succeed in a facial challenge by establishing that no set of circumstances exists under which the Act would be valid, i.e., that the law is unconstitutional in all of its applications." (internal quotation marks omitted)). An as-applied challenge, by contrast, "alleges that the application of the statute in the particular context in which he has acted . . . would be unconstitutional. The practical effect of holding a statute unconstitutional 'as applied' is to prevent its future application in a similar context, but not to render it utterly inoperative." *Wymsylo*, 970 N.E.2d at 907 .

The claims here fall cleanly in the "as-applied" category. Appellants do not ask us to hold the entire ordinance unconstitutional in its every application. Rather, they seek return of *their* money, Second Amended Compl. 7–12, a writ of mandamus ordering the administrative hearing that *they* earlier waived, *id.* at 12, and a declaration that the City "had no legal authority to demand,

collect or retain payment of fines *from citizens of non-owners of vehicles* [sic] under CCO 413.031."

*Id.* at 13 (emphasis added). These arguments deal uniformly with the ordinance as applied to lessees, not its facial validity. Appellants could have pursued the arguments that they raise here in the appellate process that they waived. *See Grossman*, 698 N.E.2d at 78–79 (explaining that a litigant need not "separately file an appeal of the administrative decision and a declaratory judgment challenging the constitutionality as applied of the ordinance at issue."); *see also Dickson & Campbell, L.L.C.*, 908 N.E.2d at 969–71 (holding that vehicle lessee could not be liable under CCO 413.031 on review of § 2506 decision by district court). The City meets the third prerequisite for the application of claim preclusion.

Finally, claim preclusion applies only if the "second action aris[es] out of the transaction or occurrence that was the subject matter of the previous action." *Hapgood*, 127 F.3d at 493. A "transaction," under Ohio law, is "a common nucleus of operative facts." *Grava*, 653 N.E.2d at 229 (internal quotation marks omitted).

> That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the facts . . . or would call for different measures of liability or different kinds of relief.

*Ibid.* (quoting Restatement (Second) of Judgments § 24 cmt. c (1982)).

Appellants' complaint alleges that the City's collecting automated-traffic-enforcement fines from lessees is unconstitutional. Their allegations begin and end with the issuance of a traffic citation. *Cf. Portage Cnty. Bd. of Commrs. v. Akron*, 846 N.E.2d 478, 495 (Ohio 2006) ("Several developments followed construction of Lake Rockwell that render res judicata inappropriate.");

*Evans*, 425 F. App'x at 439 ("claim preclusion does not apply because the 'transaction' that was the subject matter of the suspension hearing was Smathers's suspension of L.E., and did not incorporate the entire course of conduct on which L.E. premised her § 1983 due process claims."). It is true that some of Appellants' claims rest on "*evidence or grounds or theories of the case not presented in the first action, or . . . seek remedies or forms of relief not demanded in the first action.*" *Grava*, 653 N.E.2d at 229. These differences, though, are irrelevant, as a matter of Ohio law. The facts that underlie this suit—the issuance of traffic citations to lessees, rather than owners, of vehicles—are identical to the facts that confronted the plaintiffs when they received their notices of liability. The City satisfies the fourth prerequisite for the application of claim preclusion.

Because payment of the fines levied in Appellants' citations, and acceptance of that payment by the City, was a final decision, the parties here are the same as the parties to the original citation, Appellants could have litigated all of the claims they raise here in an appeal to the Court of Common Pleas, and this suit arises out of the same common nucleus of operative fact as the traffic citations, the district court's decision to dismiss was correct.[4] Because we resolve the appeal on claim-preclusion grounds, we need not assess whether issue preclusion would also bar Appellants' claims.

---

[4] *Lycan v. Cleveland*, No. 94353, 2010 WL 5075520, at *2 (Ohio Ct. App. Dec. 9, 2010), does not alter our analysis. There, the Ohio Court of Appeals held that vehicle lessees in circumstances identical to Appellants' were not "necessarily foreclose[d] [from] any right to equitable relief." *Ibid. Lycan*, though, does not discuss whether claim preclusion would apply. It is, therefore, inapposite.

IV

Appellants could have litigated all of the claims that they now press through the ordinance's appeals process. Instead, they chose to settle with the City by paying their fines. The district court correctly concluded that claim preclusion bars Appellants' claims. We AFFIRM.

No. 11-4025
*Carroll, et al. v. City of Cleveland*

**HELENE N. WHITE, Circuit Judge, concurring in part and dissenting in part.**

There are many reasons why Plaintiffs' federal claims should fail, but I am not convinced that claim preclusion under Ohio law is one of them. The procedural due process claim attacks the procedures through which Cleveland determines liability under the ordinance. A defendant in a civil infraction proceeding challenging the adequacy of the procedures used to obtain the judgment of responsibility challenges the procedures, not the alleged infraction. That Plaintiffs had the opportunity to contest their liability goes to the merits of the procedural due process claim rather than the question of its merger or bar. Nevertheless, although not reached by the district court, it is clear beyond peradventure that Plaintiffs were provided with constitutionally sufficient procedural process. As the majority observes, they had ample opportunity to contest whether the ordinance applied to them as lessees.

As to the substantive due process claim, the allegation is that Cleveland arbitrarily and capriciously implemented a custom or policy to ignore the plain language of its ordinance and issue citations to individuals who leased, not owned, their vehicles. This too is based on a different nucleus of operative facts. However, this court previously affirmed the dismissal of Plaintiffs' claims based on the Fifth Amendment's Takings Clause. With that underpinning removed, all that remains is the general allegation that Cleveland violated Plaintiffs' substantive due process rights by their arbitrary and capricious policy of enforcing the ordinance against them. But, in the context of "abusive executive action" "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 198 (2003) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Here, Cleveland

- 16 -

did no more than apply an ordinance to a group of persons who were not included within its scope as determined by the Ohio court. This is hardly egregious official conduct given that Cleveland Codified Ordinance 413.031(p)(3) defines "vehicle owner" as "the person or entity identified by the Ohio Bureau of Motor Vehicles . . . as the registered owner of the vehicle," and the BMV lists at least some lessees, as in *Dickson & Campbell, L.L.C. v. City of Cleveland*, as additional owners. 908 N.E.2d 964, 971 (Ohio Ct. App. 2009) (Cooney, J., dissenting).

Thus, I concur in the dismissal of Plaintiffs' federal due process claims, albeit for different reasons.

I would, however, remand the state claims so that the district court can remand them to state court under the circumstance that an Ohio court has permitted similar plaintiffs to pursue unjust enrichment claims. Although the majority accurately observes that *Lycan v. Cleveland* did not consider a res judicata defense, it did state that the question whether the plaintiffs claims to equitable relief were waived depended on the circumstances:

> While we recognize that the appellants had the opportunity to challenge the imposition of the fines before they paid them, this opportunity does not necessarily foreclose any right to equitable relief. The law governing restitution allows the court to consider myriad factors in determining whether the retention of a benefit is unjust. *See* Restatement of the Law, Restitution (1937).

*Lycan*, No. 94353, 2010 WL 5075520, at *2 (Ohio Ct. App. Dec. 9, 2010). Because Plaintiffs' unjust enrichment claims are clearly a matter of state law, it is not clear that the Ohio court would consider them barred, and the federal claims have been resolved, I think it prudent to remand the state claims so that the district court can again remand them to state court.