NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 18a0381n.06

Case No. 18-3036

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Jul 31, 2018

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TALISMANIC PROPERTIES, LLC, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| and | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| JUDITH TOMB, | ) | OHIO |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF TIPP CITY, OHIO, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: MOORE, THAPAR, and NALBANDIAN, Circuit Judges.

THAPAR, Circuit Judge. Talismanic Properties, LLC wanted to build a residential subdivision in Tipp City, Ohio called Cedar Grove. Unfortunately, Talismanic's dealings with Tipp City were nowhere near as pleasant as the subdivision's arboreal name.

To build Cedar Grove, Talismanic needed Tipp City's approval. But in obtaining that approval, Talismanic learned that Tipp City would require it to finance the extension of electrical service out to the new subdivision. Talismanic found that requirement bothersome. For starters, Talismanic failed to see why the estimated electrical costs were justified. In fact, Talismanic

believed that the costs were an unconstitutional exaction—and even wrote a letter to Tipp City claiming as much. In addition, Talismanic suspected that Tipp City was singling it out for harsh treatment, having not imposed the same requirement on other developers. But despite Talismanic's complaints, Tipp City would not budge. It told Talismanic that Cedar Grove would not get the go-ahead unless Talismanic agreed to the electrical costs. Seeing no other option, Talismanic agreed.

Eventually, however, Tipp City decided that it would not approve Cedar Grove for other reasons. And so Talismanic filed suit in an Ohio court to compel approval. Specifically, Talismanic asked the court to order Tipp City to approve the parties' construction agreement for Cedar Grove—which included Talismanic's obligation to finance an estimated $142,721 in electrical costs. Several months later, the parties settled the suit. Under the settlement, Tipp City approved Cedar Grove, and Talismanic agreed to pay the electrical costs. At no point did Talismanic voice its concerns about those electrical costs before the state court.

But not long thereafter, Talismanic filed a second suit against Tipp City. This time, Talismanic argued that the electrical costs both (1) amounted to a taking without compensation in violation of the Fifth Amendment, and (2) violated its right to equal protection under the Fourteenth Amendment. The district court granted summary judgment for Tipp City, holding that *res judicata* bars Talismanic's constitutional claims. Talismanic now appeals. We review de novo. *Wilkins v. Jakeway*, 183 F.3d 528, 531–32 (6th Cir. 1999).

*Res judicata* simply means that a litigant generally does not get two bites at the apple. If a court has reached final judgment on a party's claim, then a later court cannot hear that same claim or claims the party could have brought. To determine whether *res judicata* bars Talismanic's claims, we look to the rules of *res judicata* in the forum that decided the first case—here, Ohio.

28 U.S.C. § 1738; *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011). Under Ohio law, *res judicata* comprises four elements: (1) a prior suit litigated to a final, valid decision on the merits; (2) the same parties as in the prior suit, or their privies; (3) a second suit that raises claims that "were or could have been litigated" in the prior suit; and (4) claims in the second suit that "aris[e] out of the transaction or occurrence that was the subject matter" of the prior suit. *Boggs*, 655 F.3d at 520 (quoting *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997)). Here, Talismanic concedes the first two elements. But it disputes the third and fourth.

*The third element.* Talismanic claims that it could not have litigated its constitutional claims in the state suit because those claims were not yet ripe. Talismanic is incorrect. First, the facts giving rise to Talismanic's claims occurred *before* Talismanic filed its state suit. *Cf. id.* at 523 (denying res judicata when challenged actions postdated first suit and plaintiff's injuries would have only been "at best speculative"). Second, Talismanic *knew* these facts before its first suit. *Cf. id.*; *Ardary v. Stepien*, No. 82950, 2004 WL 253491, at *3 (Ohio Ct. App. Feb. 12, 2004) (denying *res judicata* where underlying facts were unknown "until after the [first suit] was filed and dismissed"). Third, Talismanic's requested relief in the state case—forcing Tipp City to approve Cedar Grove—also obligated Talismanic to pay Cedar Grove's electrical costs. So Talismanic's first suit inflicted the very harm that it now complains of in this case. And Talismanic cannot claim an inability to raise an issue that its own settlement of its state suit caused. *See Carroll v. City of Cleveland*, 522 F. App'x 299, 304 (6th Cir. 2013) ("[C]laim preclusion applies to a party who settles a civil case and later attempts to litigate claims that she could have pursued in the case that she settled."); *Daniel v. Shorebank Cleveland*, No. 92832, 2010 WL 973467, at *4 (Ohio Ct. App. Mar. 18, 2010) (barring suit raising claims that plaintiff failed to raise prior to settling first suit). In the same vein, Talismanic's argument that there was no final agency action

or contract compelling it to pay electrical costs at the time of the state suit ignores that its own state suit *produced* both that final agency action and that contract.[1]  In short, Talismanic knew of its complained-of harms, invited them to occur through the state suit, and thus should have raised them then.

*The fourth element*.  Talismanic's present claim also arises from the same "transaction or occurrence" as the state-court suit.  A claim arises out of the same transaction or occurrence as a prior suit even where the claim "depend[s] on different shadings of the facts, or would emphasize different elements of the facts."  *Grava v. Parkman Twp.*, 653 N.E.2d 226, 229 (Ohio 1995) (quoting Restatement (Second) of Judgments § 24 cmt. c (Am. Law Inst. 1982)).  It is irrelevant whether "the facts necessary to obtain relief" in a second suit differ from those in the first, so long as the "nucleus of facts" at issue in the second suit "was the subject matter" of the first.  *Id.* at 228–30, 228 n.2; *McCory v. Clements*, No. 19043, 2002 WL 857721, at *3 (Ohio Ct. App. Apr. 26, 2002) ("The fact that [the plaintiff] focuses on different facts to support the two claims does not negate [the] *res judicata* defense."); *see also City of Canton v. Maynard*, 766 F.2d 236, 239 (6th Cir. 1985) (per curiam) ("[The] factual basis for the appellant's present constitutional challenge was easily discernible in the earlier litigation, and no significant new facts have been alleged that would entitle the appellants to avoid the effect of res judicata.").  Thus, the fourth element is met even if a claim relies on new theories or seeks new relief.  *Grava*, 653 N.E.2d at 229.

---

[1] Talismanic points out that Tipp City's approval of Cedar Grove did not formally take effect until after the state suit.  But the fact that Tipp City's approval did not take formal effect until after dismissal does not mean the parties' settlement agreement in the state suit was not binding, or that Talismanic was unaware of its objections to the electrical costs at that time.  What is more, the state court retained jurisdiction to enforce the settlement agreement, including Talismanic's obligation to pay electrical costs, for a full 120 days *after* dismissal of the state suit, during which Tipp City's approval went into effect.  During that period, the state court reserved "power to direct the parties to take whatever remedial action, within the Court's discretion, it considers necessary to fulfill the terms of the Agreement." R. 84-1, Pg. ID 4810.  Yet Talismanic still elected not to raise any of its objections to the electrical costs during that time period.

Here, Talismanic's constitutional claims arise from the very same agreement to pay electrical costs that Talismanic incorporated in its state-court complaint, and that the parties incorporated into their settlement in the state suit. The only difference is that while Talismanic asked the state court to bind the parties to that agreement in the state suit, it now changes its tune to seek damages flowing from that agreement in the present case. In other words, Talismanic's requested relief has changed, but the facts have not. So Talismanic's claims arise from the same transaction or occurrence as the state suit. *Id.* at 228–30, 228 n.2. The authorities Talismanic relies on to the contrary, each involving separate transactions or occurrences, are inapposite. *Chattree v. Chattree*, No. 95051, 2011 WL 1584060, at *4 (Ohio Ct. App. Apr. 21, 2011) (fourth element not satisfied because second suit concerned conduct by defendant not at issue in first suit); *Geiger v. Westfield Nat'l Ins. Co.*, No. C-080355, 2008 WL 5412490, *2 (Ohio Ct. App. Dec. 31, 2008) (same); *Miami Valley Hosp. v. Purvis*, No. 21740, 2007 WL 2684990, at *3 (Ohio Ct. App. Sept. 14, 2007) (fourth element not satisfied where two suits "involv[ed] different rights and duties of the parties").

\*　　\*　　\*

Ohio's courts have cautioned that *res judicata* should not be applied to work an injustice. *See, e.g.*, *Davis v. Wal-Mart Stores, Inc.*, 756 N.E.2d 657, 659 (Ohio 2001). But there is nothing unfair about applying the principle in this case, where "any injustice is self-perpetuated and certainly does not rise to the level of nullifying *res judicata*." *Brown v. Dayton*, 730 N.E.2d 958, 963 (Ohio 2000) (internal quotation marks omitted).

We **AFFIRM** the district court.

**KAREN NELSON MOORE, Circuit Judge, concurring in the judgment.** Although I agree with the majority's judgment, I would analyze this case somewhat differently. I believe that Talismanic's suit is barred by the settlement agreement.

"[S]ettlement agreements . . . ordinarily support claim preclusion." 18 CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 4443 (3d ed. April 2018 update); *see also Wyatt v. Wyatt*, 602 N.E.2d 1166, 1168 (Ohio 1992) (holding that res judicata barred a plaintiff's claim for child support because she had settled this claim in an Alaska state court); *Rogers v. City of Whitehall*, 494 N.E.2d 1387, 1389 (Ohio 1986) (applying res judicata to a claim that was previously resolved via a settlement agreement in federal court). Furthermore, "[i]f it is clear that the parties agreed to settle claims that were not reflected in the original pleadings, preclusion may extend to claims that were not even formally presented." 18 WRIGHT & MILLER, *supra*. Although the "preclusive effects [of settlements] should be measured by the intent of the parties . . . an objective manifestation of intent may support preclusion that was not subjectively intended." *Id.*

This is what occurred here. As early as July 2013, the plaintiffs had argued that the charge for connecting Talismanic's development to the grid was an unconstitutional exaction. R. 85-4 (July 2013 Ltr.) (Page ID #5055). The plaintiffs then sued to compel the city to execute the construction agreement containing that charge. R. 96-17 (1st Action Amended Compl.) (Page ID #6902). Finally, the parties settled the first action by executing that same construction agreement. R. 84-1 (Settlement Agreement) (Page ID #4810–23). Thus, although Talismanic did not formally argue before the state court that the charge was unconstitutional, its actions during the first suit are objective indications that it intended the settlement agreement to resolve all of its claims against

Tipp City arising from the development of Cedar Grove. Therefore, the settlement agreement precluded Talismanic's current claims.

Furthermore, the settlement agreement also acts as a waiver of Talismanic's current claims. *See* Appellee Br. at 27–28. A party's voluntary decision to contract with a state actor will sometimes work to waive some of its constitutional rights. *See United States v. Petty Motor Co.*, 327 U.S. 372, 375–76 (1946) (holding that a tenant had waived its takings claim because its lease agreement included a clause that terminated the lease if the government exercised eminent domain over the leased property); *Tenn. Secondary Sch. Athletic Ass'n v. Brentwood Acad.*, 551 U.S. 291, 295–96, 299 (2007) (holding that a party had limited its right to free speech by voluntarily joining a state association with anti-recruiting rules). For example, the Ninth Circuit held that fishermen who entered into a lease with the State of Alaska for the rights to fish in a specific area had waived any claims that they may have had alleging a regulatory takings because the lease contained a provision that stated that it did not limit the power of Alaska to adopt or enforce regulations that affected the value of the lease. *Vandevere v. Lloyd*, 644 F.3d 957, 967–69 (9th Cir.), *cert. denied*, 565 U.S. 1093 (2011).

"There is a presumption against waivers of constitutional rights, which can be overcome by clear evidence 'that there was an intentional relinquishment or abandonment of a known right or privilege.'" *VIBO Corp. v. Conway*, 669 F.3d 675, 690 (6th Cir. 2012) (quoting *Brookhart v. Janis*, 384 U.S. 1, 4 (1966)). There is such evidence here. First, Judith Tomb informed Tipp City in July 2013 that she believed that the amount the city was demanding Talismanic pay to connect its development to the electricity grid might constitute an unconstitutional exaction. R. 85-4 (July 2013 Ltr.) (Page ID #5055). Thus, when Talismanic filed the first action against Tipp City in 2014 it knew it had a right to be free from unconstitutional exactions. Second, Talismanic alleged in

the first action that Tipp City's decision to deny final planning permission was "unconstitutional, illegal, arbitrary, capricious, unreasonable, and unsupported by the . . . evidence." R. 96-17 (1st Action Amended Compl. at ¶ 94) (Page ID #6853). Talismanic, therefore, knew of its right to have Tipp City's decisionmaking process be supported by a rational basis, *see, e.g.*, Appellant Reply Br. at 25, when it brought suit in state court. Consequently, by suing to compel Tipp City to grant final planning permission and execute the construction agreement and subsequently settling that suit, Talismanic intentionally abandoned its claims that the payment for the extension of electricity was unconstitutional. *Tenn. Secondary Sch. Athletic Ass'n*, 551 U.S. at 295–96.