NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0532n.06

Case No. 23-3256

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Dec 19, 2023

KELLY L. STEPHENS, Clerk

LANCE NOSSE,

    Plaintiff-Appellant,

v.

KEVIN F. POTTER, et al.,

    Defendant-Appellees.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF
OHIO

OPINION

Before: BOGGS, READLER, and DAVIS, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Lance Nosse was fired from his position as Chief of Police for the City of Kirtland due to purported misconduct. He challenged his termination before the Kirtland City Council and then in state court. His efforts proved unsuccessful.

Later, Nosse sued the city and associated individuals in federal court. He asserted that his termination violated several federal discrimination laws. But because Nosse had previously litigated his termination in state court, the district court dismissed Nosse's federal claims on preclusion grounds. For similar reasons, we agree that Nosse is precluded from pursuing his federal claims, and therefore affirm the judgment of the district court.

I.

This dispute traces back to Chief of Police Lance Nosse's visit to the home of Officer James Fisher. As captured by a surveillance camera, Nosse arrived around six p.m. Standing in Fisher's

driveway, Nosse consumed two cans of beer while talking to Fisher on the phone before entering Fisher's home. Inside, Nosse drank more alcohol and socialized. Leaving the house around nine, Nosse and a female acquaintance remained in Fisher's driveway, continuing to converse past midnight, when Nosse eventually drove away.

Concerned that Nosse was abusing alcohol, Fisher showed Kirtland Mayor Kevin Potter footage of Nosse in Fisher's driveway. That same day, Nosse notified Potter that he had been admitted to an alcohol addiction treatment facility. During his absence, Nosse sought leave time from the police department under the Family and Medical Leave Act (FMLA). Around the same time, the department began an internal investigation into Nosse's conduct.

Nosse was released from treatment a few months later, intending to return to work. Potter, however, informed Nosse that his employment was being terminated due to his violations of city policy, including consuming alcohol before driving a city vehicle, operating the vehicle with an open container, using vulgar hand gestures, making sexual and racial comments, lying about cell phone use, and neglecting official duties. The mayor then explained that he would be seeking ratification of that decision by the city council in accordance with Ohio Revised Code § 733.35, which allows for the removal of a local official due to "misfeasance, malfeasance, nonfeasance, misconduct in office, gross neglect of duty . . . or habitual drunkenness."

A two-day hearing before the city council followed. Nosse was represented by counsel, who presented evidence, examined witnesses, and made a closing argument. At the hearing's conclusion, the council voted to terminate Nosse.

Nosse responded in two respects, both on the same day. One was an appeal of the council's decision to the Lake County Court of Common Pleas. *See* Ohio Rev. Code Ann. § 2506.01 (West 2023) (authorizing appeals from decisions of agencies of political subdivisions). In his appeal,

Nosse alleged that the council erred in determining that Nosse's behavior violated police department rules. *Nosse v. City of Kirtland*, No. 21CV001063, 2022 WL 18645869, at \*3 (Lake Cnty. Ct. Com. Pl. Mar. 31, 2022). The other was to file a disability discrimination charge against the city with the Equal Employment Opportunity Commission (EEOC) and the Ohio Civil Rights Commission (OCRC), alleging that his termination was in retaliation for an alcoholism disability.

Nosse's efforts produced mixed results. The court of common pleas held that the city council did not abuse its discretion in determining that Nosse's termination was justified. *Id.* at \*5. Nosse appealed that decision to the Ohio Court of Appeals. *Nosse v. City of Kirtland*, No. 2022-L-032, 2022 WL 17091954 (Ohio Ct. App. Nov. 21, 2022). While his appeal was pending, Nosse received a right-to-sue letter from the EEOC and OCRC. The appeals court eventually affirmed the trial court. *Id*. at \*8. When it did, Nosse filed this lawsuit, alleging that the City of Kirtland and its city council had violated three federal laws. He also asserted state law claims against these two defendants, as well as several associated individuals and a police union.

Invoking Federal Rule of Civil Procedure 12(b)(6), defendants moved to dismiss Nosse's complaint on preclusion grounds. According to defendants, Nosse was barred from litigating his federal discrimination claims because he could have raised the claims in an earlier proceeding concerning Nosse's removal from office. The district court agreed, granted defendants' motion to dismiss the federal claims on preclusion grounds, and declined to exercise supplemental jurisdiction over the remaining state claims. In this timely appeal, Nosse focuses solely on the dismissal of his federal claims.

## II.

We begin with some points to frame our review. We apply a de novo standard in assessing whether the district court properly dismissed Nosse's federal claims based on preclusion grounds.

*Abbott v. Michigan*, 474 F.3d 324, 331 (6th Cir. 2007). When considering whether to dismiss under Rule 12(b)(6), a court typically takes only the pleadings into account. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010). That said, a court "may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Id.* And we "can affirm a decision of the district court on any grounds supported by the record, even if different from those relied on by the district court." *Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999).

Nosse's appeal raises a question of federalism: What weight should a federal court give an earlier state court judgment? Were the issue one of first impression, it would deserve deep consideration. But Congress has done much of that work for us. In the full faith and credit statute, Congress instructs us to grant a "state-court judgment the same preclusive effect" that the judgment would receive under the rendering state's preclusion laws. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see* 28 U.S.C. § 1738 ("[State] Acts, records and judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."). Against that legal backdrop, the district court held that, under Ohio law, the completed state court proceedings precluded Nosse's federal claims, which arose from the same occurrence as those in state court. So we turn to that same question of Ohio law.

In the Buckeye State, the doctrine of res judicata encompasses both claim and issue preclusion. *Lycan v. City of Cleveland*, 218 N.E.3d 913, 919 (Ohio 2022). The federal defendants asserted both grounds for preclusion in the district court. The district court categorized this case as one involving issue preclusion. We tend to view the question more as one of claim preclusion. To that end, in Ohio, claim preclusion bars the litigation in a subsequent suit of "all claims which

4

were or might have been litigated in a first lawsuit" between the same parties. *Id.* at 920 (citation omitted). Claim preclusion has four elements: (1) a court of competent jurisdiction must have issued a prior final judgment on the merits; (2) there must be a second suit involving the same parties or their privies; (3) the second action must raise claims that were or could have been litigated in the first; and (4) the second action must arise out of the same transaction or occurrence that gave rise to the first. *Id.*

Those elements are met here. Two are essentially conceded. For instance, Nosse does not contest the second element—that the federal claims involve the same parties (or their privies) to the state court litigation. The parties there were Nosse, the City of Kirtland, and the Kirtland City Council. *Nosse*, 2022 WL 18645869, at *1. Here, Nosse's federal claims were against the city and city council. (The state law claims involved more parties, but those claims are not at issue on appeal.)

Nor does Nosse challenge the fourth element: whether the present action arose from the same transaction or occurrence as the first, namely, Nosse's termination as police chief. Instructive here is *Grava v. Parkman Township*, where the Supreme Court of Ohio adopted the understanding of "transaction" found in the Restatement (Second) of Judgments. 653 N.E.2d 226, 229 (Ohio 1995). The Restatement defines a transaction as a "common nucleus of operative facts," Restatement (Second) of Judgments § 24 cmt. b (Am. Law Inst. 1982), adding that the fact that a transaction may give rise to "a number of different legal theories" does not mean there are multiple claims for preclusion purposes, *id.* cmt. c. That statement fairly describes today's case, where the same facts leading to the state court proceedings underlie Nosse's present suit.

That leaves the two remaining claim preclusion elements: whether a court of competent jurisdiction issued a prior final judgment on the merits; and whether Nosse could have litigated his

5

federal claims in the prior proceeding. These too favor defendants. The common pleas court both issued a final judgment on the merits and was competent to hear Nosse's federal statutory claims.

Nosse availed himself of the Ohio state courts to contest his termination. While the city council may not have been a suitable forum in which to raise ADA, Rehabilitation Act, and FMLA claims, Nosse could have done so in the common pleas court. Under Ohio law, there was no procedural bar to Nosse bringing those claims as part of his appeal from the city council's decision. *See Carroll v. City of Cleveland*, 522 F. App'x 299, 305 (6th Cir. 2013), *abrogated on other grounds by Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019) ("[A] plaintiff pursuing an administrative appeal in Ohio need not limit herself to administrative claims. Rather, she may seek relief under *both* § 2506 *and* federal statutory law, as long as she follows the proper procedures."); *see also Krol v. Seven Hills City Council*, No. 88695, 2007 WL 2269465, at *2 (Ohio Ct. App. Aug. 9, 2007) (explaining that in the context of a § 2506.01 appeal to the court of common pleas the appellants could amend their complaint to add claims under the ADA and Rehabilitation Act); *cf.* Ohio Rev. Code Ann. § 2506.04 (West 2023) (authorizing Ohio courts to find an underlying administrative decision "unconstitutional" or "illegal").

*Carroll* presents an instructive example. There we held that claim preclusion barred the plaintiffs from asserting a takings claim against Cleveland after the plaintiffs had paid their fines for their traffic citations and did not otherwise challenge their violations. 522 F. App'x at 307. Preclusion attached because, although an administrative hearing officer examining the propriety of the citations could not have addressed the constitutional claim, the court of common pleas could have done so in reviewing the officer's decision. *Id*. at 305; *see also Lycan*, 218 N.E.3d at 921 (explaining that a litigant who raises an issue outside a hearing officer's authority to resolve can appeal and raise the issue to the state courts). Likewise here. Even though the city council could

not have decided Nosse's federal discrimination claims, he could have raised them in his appeal to the court of common pleas. The court of common pleas, therefore, was competent to hear Nosse's federal discrimination claims.

That Nosse did not receive an EEOC (or OCRC) right-to-sue letter until months after his state court proceedings commenced does not change our conclusion. We addressed a similar issue in *Heyliger v. State University & Community College System of Tennessee*, 126 F.3d 849 (6th Cir. 1997). Heyliger filed a Title VII complaint with the EEOC and concurrently sued in state court asserting a claim under state law. *Id*. at 851. After losing in state court some three years later, Heyliger received a right-to-sue letter from the EEOC. *Id*. When he did, he filed a Title VII suit in federal court, a case we later dismissed on claim preclusion grounds. *Id*. at 856. Heyliger objected. How, he asked, could he have filed a Title VII suit in state court before receiving the letter? *Id*. at 854–55. The answer, we explained, was found in 42 U.S.C. § 2000e-5(f)(1), which permits an EEOC complainant to request a right-to-sue letter 180 days after filing an EEOC complaint. *Id*. at 855. Because Heyliger filed his EEOC complaint nearly three years before the state court issued its judgment, he had time to request a right-to-sue letter and amend his state court complaint to include the Title VII claim. *Id*. at 855–56.

So too here. Although an EEOC right-to-sue letter is not required to bring suit under the FMLA, *see* 29 U.S.C. § 2617(a)(2) (providing a right of action to employees), § 2000e-5 applies to ADA claims, *see* 42 U.S.C. § 12117(a), and to claims under the Rehabilitation Act, *see* 29 U.S.C. § 794a(a)(1). And more than 180 days elapsed between the date Nosse filed both his administrative appeal with the court of common pleas and his EEOC complaint, and the date of the common pleas court decision. Nosse, therefore, could have requested a right-to-sue letter while the state court proceeding was pending, allowing him to fold his federal claims into his state court

complaint. *Cf.* Ohio Civ. R. 15(A) (permitting courts to "freely give leave [to amend a complaint] when justice so requires").

\* \* \* \* \*

Ohio's law of claim preclusion barred Nosse's federal claims. Accordingly, we affirm the judgment of the district court.