RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0041p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

────────────────

LaVon Moore, Successor Trustee of the Clarence M.
Moore and Laura P. Moore Trust,

                     *Plaintiff-Appellant*,

    *v.*

Hiram Township, Ohio; Janet Pancost; Gary
Bott; Thomas Franek; Richard Gano; Does 1–10,

                    *Defendants-Appellees*.

> No. 20-3259

────────────────

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:19-cv-01750—George J. Limbert, Magistrate Judge.

Decided and Filed: February 19, 2021

Before: MOORE, GILMAN, and GRIFFIN, Circuit Judges.

────────────────

## COUNSEL

**ON BRIEF:** Joel A. Holt, ICKES & HOLT, Stow, Ohio, for Appellant. Tonya J. Rogers, BAKER, DUBLIKAR, BECK, WILEY & MATHEWS, North Canton, Ohio, for Appellees.

GILMAN, J., delivered the opinion of the court in which GRIFFIN, J., joined. MOORE, J. (pp. 17–24), delivered a separate dissenting opinion.

────────────────

## OPINION

────────────────

RONALD LEE GILMAN, Circuit Judge. This case involves a zoning dispute over LaVon Moore's right to continue using his rural property in Ohio as a private airport.

Moore filed the present suit under 42 U.S.C. § 1983, alleging that Hiram Township, members of the Township's Board of Zoning Appeals (BZA members), and the Township's Zoning Inspector (collectively, the defendants) violated (1) his procedural due process rights by not following the proper process for issuing a certificate of nonconforming use, (2) his substantive due process rights by unlawfully restricting the use of his property, and (3) his equal protection rights by not requiring other similarly situated landowners to apply for a certificate of nonconforming use. The district court dismissed the case based on the doctrine of res judicata. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Because we are reviewing a dismissal pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, we accept as true all of the factual allegations contained in Moore's complaint. *See Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). Moore is the successor trustee of an Ohio trust that is the record title holder of approximately 108 acres of real property located in Hiram, Ohio (the Property). Although Laureen Ruth Moore Copeland was listed as the successor trustee in the prior state-court litigation involving this zoning dispute, LaVon Moore now serves in that role. The Moore family, individually or in trust, has owned and maintained the Property since 1813. They have operated Far View Airport, a small airport located on the Property, since 1948.

Around 1951, the Township enacted a zoning resolution that zoned the Property as Rural-Residential and classified the airport as a nonconforming use. Under Ohio zoning law, a "nonconforming use" is a lawful, preexisting use of property established prior to the enactment of a land-use regulation. *See* Ohio Rev. Code § 519.19. A nonconforming use can continue so long as the use is not abandoned for two years or more. *Id.*

The airport has been active in varying degrees since its inception. But its use for ultralight aircraft and hang gliders started only recently, and that use has prompted nuisance complaints from neighboring landowners. In 2016, Township officials told Moore that he needed to acquire a certificate of nonconforming use in order to continue the airport's operations. After two unsuccessful attempts to secure a certificate, Moore was directed to apply to the BZA.

This prompted Moore to request a certificate from Zoning Inspector Richard Gano, who in turn referred the matter to the BZA for a hearing.

In September 2016, the BZA conducted a public hearing to determine whether to issue Moore a certificate of nonconforming use. The BZA voted to grant Moore a certificate at the end of the hearing, but imposed several conditions on the certificate. Moore timely appealed the BZA's decision to the Portage County Common Pleas Court pursuant to Ohio Revised Code § 2506.01 *et seq.* (hereinafter the § 2506 Appeal), naming Hiram Township as the sole defendant. He argued that the BZA's actions were illegal, arbitrary, capricious, unreasonable, and unconstitutional because, among other things, (1) the BZA erred by issuing Moore an improper certificate of nonconforming use, (2) the BZA exceeded its statutory authority by placing illegal conditions on Moore's nonconforming use, (3) the BZA violated Ohio law by placing conditions on Moore's nonconforming use that effectively barred the use from continuing if the airport was ever sold or transferred, and (4) the BZA erred by not following its regular procedures for issuing a nonconforming-use certificate.

In July 2017, the state trial court determined that the BZA had properly issued the certificate, but the court modified several of the conditions imposed by the BZA. Both Moore and the Township appealed the trial court's judgment to the Ohio Court of Appeals. The Township argued that the trial court's modifications to the restrictions placed on the certificate were inconsistent with both the Moore family's prior use and the Township's zoning resolution. Moore in turn argued that (1) the restrictions placed on the certificate were themselves unlawful, and (2) the trial court erred in holding that the BZA was authorized to decide that large-scale use of the airport for ultralight aircraft and hang gliders was a nuisance. In December 2018, the Ohio Court of Appeals affirmed the trial court's judgment in its entirety. Neither the Township nor Moore appealed the matter to the Ohio Supreme Court.

While his appeal of the state trial-court judgment was pending in the Ohio Court of Appeals, Moore turned to the federal courts and filed a complaint in October 2018. As set forth in an authorized refiled complaint, Moore's four claims against the defendants are for (1) a violation of his procedural due process rights under 42 U.S.C. § 1983 for allegedly not pursuing the proper process for issuing a certificate of nonconforming use, (2) a violation of his

substantive due process rights under 42 U.S.C. § 1983 for restricting the use of his property in an allegedly unlawful manner, (3) a violation of his equal protection rights under 42 U.S.C. § 1983 for not requiring other allegedly similarly situated landowners to apply for a certificate of nonconforming use, and (4) punitive damages. The Township and the individual defendants filed a motion for judgment on the pleadings based on res judicata, qualified immunity, and the expiration of the statute of limitations. In January 2020, the district court granted the motion, concluding that Moore's claims were barred by the doctrine of res judicata. This timely appeal followed.

## II. ANALYSIS

### A. Standard of review

We review de novo a judgment on the pleadings granted pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6). *Roger Miller Music, Inc. v. Sony/ATV Publishing*, *LLC*, 477 F.3d 383, 389 (6th Cir. 2007). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place,* 539 F.3d 545, 549 (6th Cir. 2008) (internal citation and quotation marks omitted).

### B. Res judicata

Federal courts give the same preclusive effect to a state-court judgment as that judgment would receive in the rendering state, meaning that "if an individual is precluded from litigating a suit in state court by the traditional principles of res judicata, he is similarly precluded from litigating the suit in federal court." *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011) (quoting *ABS Indus., Inc. ex rel. ABS Litig. Trust v. Fifth Third Bank,* 333 F. App'x 994, 998 (6th Cir. 2009)). We look to Ohio law to assess whether res judicata should attach to the state-court judgment in the present case. *Id.*

Under Ohio law, the doctrine of res judicata encompasses two related concepts: claim preclusion and issue preclusion. *O'Nesti v. DeBartolo Realty Corp.*, 862 N.E.2d 803, 806 (Ohio 2007) (citation omitted). As a general matter, claim preclusion bars the litigation of claims that were or could have been litigated in the original action. *Id.* Issue preclusion is more limited, preventing the relitigation of a specific fact or point previously determined by a court. *Id.* The defendants argue that both apply here. But because claim preclusion bars all of Moore's claims, we need not address issue preclusion.

This court has distilled Ohio's doctrine of claim preclusion down to the following four elements:

> (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*Boggs*, 655 F.3d at 520 (quoting *Hapgood v. City of Warren,* 127 F.3d 490, 493 (6th Cir. 1997)).

The defendants bear the burden of proof as to each element. *See Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008). Moore, however, does not dispute that this action arises out of the same transaction or occurrence as his prior state-court suit. The fourth element is therefore satisfied because both actions concerned the issuance of the certificate of nonconforming use, leaving only the first three elements to be examined.

### 1.      *Final adjudication on the merits*

A judgment was entered by the state trial court that affirmed in part and modified in part the BZA's administrative decision. The judgment specifically discussed the facts of the case and concluded that, although the BZA had properly issued the certificate, some of the conditions imposed by the certificate were improper and thus had to be modified. Such a judgment constitutes a "decision on the merits." *See Hendrix v. Roscommon Twp.*, 2004 WL 1197359, at *5 (E.D. Mich. May 18, 2004) (finding that the state trial court's judgment in a zoning dispute regarding a nonconforming use constituted a final decision on the merits). The fact that the state

trial court acknowledged but did not expressly address Moore's constitutional challenges is immaterial because the court necessarily rejected the challenges in entering its judgment. *See id.*

Moreover, "[w]hether the original claim explored all the possible theories of relief is not relevant" to the claim-preclusion analysis. *Brown v. City of Dayton*, 730 N.E.2d 958, 962 (Ohio 2000). As discussed below, even if Moore's § 1983 claims are distinct from the underlying challenge (which they are not), they could have been brought in the underlying action and are thus subsumed by the state trial court's judgment for res judicata purposes. *See Heike v. Cent. Michigan Univ. Bd. of Trustees,* 573 F. App'x 476, 480, 483 (6th Cir. 2014) (holding that, where a plaintiff's new Title IV and Title IX claims could have been litigated with her original § 1983 equal protection and due process claims, the grant of summary judgment in an earlier action constituted a "final adjudication on the merits").

Also irrelevant is whether the state trial court was ultimately wrong in its judgment. The Supreme Court has held that "the res judicata consequences of a final, unappealed judgment on the merits" are not "altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981). If Moore believed that the state trial court issued an erroneous ruling on the constitutional issues, he could have raised those issues in his appeal to the Ohio Court of Appeals (which he did not do) and requested further review by the Ohio Supreme Court (which he also did not do) instead of filing a collateral attack in federal court. *See id.* at 398–99.

### 2.    *Same parties or their privies*

Moore concedes that, although the Moore Family Trust was represented by a different successor trustee in the state-court action, both Moore and the Township were parties to the § 2506 Appeal. The parties dispute, however, whether the remaining defendants in this action (Zoning Inspector Gano and the BZA members) are in "privity" with the Township.

A final judgment on the merits of an action bars not only the same parties from relitigating claims that were or could have been raised in that action, but also parties to the second case who are in privity with a party bound by the earlier judgment. *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996). Under Ohio law, privity is "somewhat amorphous," and

"[a] contractual or beneficiary relationship is not required." *Brown*, 730 N.E.2d at 962. It is created when there is a "mutuality of interest, including an identity of desired result" between the two parties. *Id.*; *see also State ex rel. Schachter v. Ohio Pub. Emps. Ret. Bd.*, 905 N.E.2d 1210, 1217 (Ohio 2009) (same). But such mutuality of interest exists only if "the person taking advantage of the judgment would have been bound by it had the result been the opposite." *O'Nesti v. DeBartolo Realty Corp.*, 862 N.E.2d 803, 806 (Ohio 2007) (quoting *Johnson's Island, Inc. v. Danbury Twp. Bd. of Trustees,* 431 N.E.2d 672, 675 (Ohio 1982)).

Ohio courts have thus found that privity exists when "a government official is sued in his individual and in his official capacity," *id.* (citing *Kirkhart v. Keiper*, 805 N.E.2d 1089, 1093 (Ohio 2004)), "between an association and its individual members when the members are liable by law for a judgment against the association," *id.* (citing *State ex rel. Clinton Mut. Ins. Assn. v. Bowen*, 9 N.E.2d 494, 497 (Ohio 1937)), and in a "principal-agent relationship . . . where the claims alleged are within the scope of the agency relationship," *ABS Indus., Inc. ex rel. ABS Litig. Tr. v. Fifth Third Bank*, 333 F. App'x 994, 999 (6th Cir. 2009) (collecting Ohio cases). Relevant to this case, Ohio courts have established that "a government official who is sued in his or her official capacity is in privity with the governmental entity." *Denton v. Bedinghaus*, 2002-Ohio-3273, 2002 WL 1393563, at *4 ¶ 16 (Ohio Ct. App. 2002), *aff'd sub nom. State ex rel. Denton v. Bedinghaus*, 784 N.E.2d 99 (Ohio 2003); *see also Stotts v. Pierson*, 976 F. Supp. 2d 948, 962 (S.D. Ohio 2013) (noting the lack of dispute that the city and the BZA members, in their official capacities, were privies of the BZA for purposes of res judicata).

Moore named Township BZA Members Gary Bott, Thomas Franek, and Janet Pancost, as well as Township Zoning Inspector Gano, as defendants. Although he did not indicate in his complaint whether he was suing them in their official or individual capacities, Moore's opening brief to this court makes clear that this is an official-capacity suit. Moore first delineates the difference between official-capacity and individual-capacity suits, explaining that the former involves officials "acting in their official capacity, cloaked in authority, abusing their authority." He then states that he "clearly alleged that Gano and the BZA Members, individually and collectively, <u>acted in their official capacities as the zoning inspector and BZA in a manner that</u>

exceeded and abused their lawful authority under the Zoning Resolution and Ohio law." (Emphasis in original.)

Although parts of the complaint might suggest an individual-capacity suit as well, such as allegations that the defendants "individually and collectively" took certain actions and that the defendants are "jointly and severally liable," Moore's briefing is murky as to these arguments and clearest as to the assertion underlined above. *Cf. Moore v. City of Harriman*, 272 F.3d 769, 774 (6th Cir. 2001) (noting that "[e]ven assuming the complaint itself failed to provide sufficient notice, [the plaintiff's] response . . . clarified any remaining ambiguity" by expressly stating that the officers are "being sued in their individual capacities"); *see also Abdur-Rahman v. Michigan Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) (finding that the pro se plaintiff cleared up the ambiguity in his motion for summary judgment). Taking the pleadings as a whole and conscious of the importance of fair notice to the individual defendants, we agree with the district court that Moore has brought his claims against the defendants in their official capacities only. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) ("It is certainly reasonable to ask that all plaintiffs . . . alert party defendants that they may be individually responsible in damages.").

But even if we were to conclude that the BZA members and Zoning Inspector Gano should also be considered sued in their individual capacities, the Ohio Supreme Court has determined that "when a party is sued as an individual for actions taken solely in her official role, res judicata may not be circumvented." *Kirkhart*, 805 N.E.2d at 1093 (finding privity when "a plaintiff brings two lawsuits against the same public officials for acts performed in their official roles, even though the defendants were sued in their official capacities in one lawsuit and in their individual capacities in the other"). This prevents a party from being able to "escape the rule of *res judicata* through expansive pleading." *Id.* (citation omitted).

In the present case, all of the actions that Moore complains about were taken by the individual defendants in the exercise of their official duties as employees of the Township. *See id.* (finding privity where allegations from both complaints were "based upon the same conduct, and all of the alleged wrongdoing stem[med] from conduct by the defendants in their official roles" that "*could only have been taken* [ ] in the exercise of their official duties" (emphasis in original)). To the extent that Moore labels the BZA members' routine conduct as individual and

unauthorized actions, such conclusory and threadbare allegations are insufficient to survive a judgment on the pleadings. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").

The same result would be reached even if the state court had found in favor of Moore and against the Township in the first action because the BZA members and Zoning Inspector Gano would have been bound by the result. Such mutuality of interest is also evidenced by the fact that Moore lumps all the defendants—the Township, the BZA members, and Zoning Inspector Gano—together throughout his complaint and in his Prayer for Relief. In sum, even if these defendants were deemed to be named in both their individual and official capacities, that would not be enough to bypass the application of res judicata.

### 3.      *Claims actually litigated or that should have been litigated*

Moore's final argument is that the district court erred in its analysis because he did not, and could not, litigate his constitutional claims as part of his administrative appeal. But the record shows that Moore did litigate his constitutional claims in his administrative appeal and, even if he did not, that he could have.

In the state-court action, Moore alleged that the BZA acted outside the scope of its authority, and that the certificate of nonconforming use, as well as the procedures used to issue the certificate, were unconstitutional. Moore further alleged that the unlawful application of the zoning regulations violated his constitutional rights. The state trial court, after considering these arguments, modified the certificate when it determined that certain conditions listed in the certificate were "clearly improper." Moore did not raise any specific constitutional issues on appeal to the Ohio Court of Appeals, which affirmed the judgment of the lower court. Neither party sought review by the Ohio Supreme Court.

Moore's claims in the case before us allege the same constitutional challenges as in the state-court action, albeit in different packaging. He argues again that the BZA acted outside the scope of its authority and that the procedures used to issue the certificate were unconstitutional, thus violating his procedural due process, substantive due process, and equal protection rights.

Although Moore provides specific labels to his constitutional rights in the present action, the allegations in the state-court action and the allegations at issue here are ultimately the same. *See generally Negin v. City of Mentor*, 601 F. Supp. 1502, 1504 (N.D. Ohio 1985) (holding that the Ohio Supreme Court's decision that the zoning practices in question were unconstitutional barred relitigating in federal court whether the landowner's due process rights were violated, even though (1) the state court "did not resolve precisely the same issues as raised by [the federal] case," and (2) the federal case, unlike the administrative appeal, was brought pursuant to § 1983). Moore's current constitutional challenges were in fact litigated in his first suit, where his arguments were rejected and not pursued on appeal.

But even if Moore's claims were not actually litigated in the underlying action, they could have been. The doctrine of res judicata requires a plaintiff to advance all theories for every ground of relief in the first action or be forever barred from asserting it. *Grava v. Parkman Twp.*, 653 N.E.2d 226, 229 (Ohio 1995). Ohio's view of res judicata is "expansive." *Demsey v. Demsey*, 488 F. App'x 1, 4 (6th Cir. 2012). That "different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims," even if the theories "depend on different shadings of the facts . . . or [ ] call for different measures of liability or kinds of relief." *Id.* (quoting *Grava*, 563 N.E.2d at 229). Where, as here, claims brought in the second suit "arose from the same transaction, or series of transactions" forming the basis of the first suit, those claims must be litigated in the earlier action. *Rawe v. Liberty Mut. Fire Ins. Co.,* 462 F.3d 521, 529 (6th Cir. 2006) (internal citation and quotation marks omitted).

Moore's procedural due process, substantive due process, and equal protection claims each stem from the same occurrence—the issuance of the certificate of nonconforming use—that was litigated in the state-court action, and thus could have been litigated at that time. His argument that a general constitutional claim is far different than a § 1983 constitutional tort is unpersuasive where each set of claims "arose from the same transaction." *See Rawe,* 462 F.3d at 529 (citation omitted).

Moore next argues that he could not have brought his § 1983 claim in the state-court action because he is now seeking money damages, a remedy barred by Ohio Revised Code

§ 2506.04. He is correct in pointing out that § 2506.04 sets forth limited options available to state trial courts in their review of administrative rulings:

> Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court.

Ohio Rev. Code § 2506.04. Such options do not include the award of money damages. Nor, for that matter, do such options include the award of the injunctive relief that Moore seeks, particularly "[a]n order directing Defendants to . . . identify all appropriate pre-existing nonconforming use within the jurisdiction of Hiram Township and issue Certificates of Nonconforming Use for those uses to the subject property owners."

Nonetheless, Moore's attempt to isolate his § 1983 claims from the doctrine of res judicata based on the relief sought fails because, as this court has explained, "a plaintiff pursuing an administrative appeal in Ohio need not limit [him]self to administrative claims. Rather, [he] may seek relief under *both* § 2506 and federal statutory law, as long as [he] follows the proper procedures." *Carroll v. City of Cleveland*, 522 F. App'x 299, 305–06 (6th Cir. 2013) (rejecting the argument that res judicata is inapplicable because the § 1983 claim sought relief—attorney fees, declaratory relief, and injunctive relief—all of which was unavailable in a § 2506 appeal) (emphasis in original).

Different procedures and standards of review govern § 2506 appeals and federal statutory claims. A court in a § 2506 appeal, unlike in a civil action, "sits in appellate review of the board's decision," *Sudan, Inc. v. Chagrin Falls*, 577 N.E.2d 1160, 1164 (Ohio Ct. App. 1989), and is authorized only to determine whether the agency's action is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence," R.C. § 2506.04. Moreover, although both procedures allow the court to admit and consider evidence, *AT&T Commc'ns of Ohio, Inc. v. Lynch*, 969 N.E.2d 1166, 1169 (Ohio 2012), a § 2506 appeal restricts, in certain circumstances, the evidence that the court may admit, *see* R.C. § 2506.03.

Despite these procedural differences, the path in Ohio for raising independent claims alongside a § 2506 appeal is well-paved—even when the joined claims request relief unavailable under the § 2506 appeal. *See, e.g.*, *Castle Manufactured Homes, Inc. v. Tegtmeier*, No. 98CA0065, 1999 WL 771605, at *2, 6 (Ohio Ct. App. Sept. 29, 1999) (considering a claim for money damages pursuant to § 1983 that the plaintiffs set forth in a combined notice of appeal and complaint following an adverse decision by the BZA); *Krol v. Seven Hills City Council,* No. 88695, 2007 WL 2269465, at *2 (Ohio Ct. App. Aug. 9, 2007) (noting that the plaintiffs who had filed a § 2506 appeal in the state trial court were granted leave to amend their complaint to raise claims under the American with Disabilities Act and the Rehabilitation Act of 1973); *Nelson v. City of Akron*, No. 14605, 1990 WL 167357, at *1 (Ohio Ct. App. Oct. 31, 1990) (reviewing a § 2506 appeal of an adverse decision by the Akron Civil Service Commission, as well as a claim for damages for tortious interference with employment relations).

Indeed, the practice of consolidating a § 2506 appeal with a separate complaint for declaratory and injunctive relief—relief that, like money damages, may not be available in a § 2506 appeal—is commonplace. *See, e.g.*, *BP Am., Inc. v. Avon City Council*, 753 N.E.2d 947, 949 (Ohio Ct. App. 2001); *Schropshire v. Englewood*, 634 N.E.2d 657, 657 (Ohio Ct. App. 1993); *Fox v. Lakewood*, 616 N.E.2d 588, 589 (Ohio Ct. App. 1992); *Ohio Holding Co. v. City of Grove City*, No. 89AP-213, 1989 WL 155961, at *1 (Ohio Ct. App. Dec. 28, 1989).

Moreover, the Ohio Court of Appeals in *D'Amico v. City of Stow*, No. 14131, 1990 WL 66894, at *6–7 (Ohio Ct. App. May 16, 1990), specifically addressed whether a party bringing a § 2506 appeal must join a related claim—even where the relief requested under the joined claim is unavailable in a § 2506 appeal—to avoid the risk of being barred from later bringing that claim in a separate action. The court in *D'Amico* dismissed the plaintiff's § 1983 action, ruling that he could have brought his § 1983 claim for money damages as part of his earlier consolidated § 2506 appeal and declaratory-judgment action. It therefore concluded that

> Gillespie had control over this litigation and it was within his ambit to determine the strategy to pursue and in which forum he would litigate. Here, where Gillespie has had a fair opportunity to fully litigate these issues and receive relief, judicial economy requires an end. We will certainly not permit a relitigation of identical

issues solely because the remedy has been unsatisfactory. *Res judicata* bars claims which were or could have been raised.

*Id.*

Federal courts interpreting Ohio law have made similar determinations. *See Lustgarten v. Ayres*, 1982 U.S. App. LEXIS 12523, at *2–3 (6th Cir. Jan. 6, 1982) (holding that the Ohio plaintiff's civil rights claims brought pursuant to § 1983 and § 1985 were barred by res judicata because those issues could have been presented during the state administrative appeal regarding her termination); *Landberg v. Newburgh Heights Police Dep't,* No. 1:17-CV-298, 2018 WL 2899660, at *5 (N.D. Ohio June 11, 2018) (concluding that, because the plaintiff could have raised his federal age-discrimination claims alongside a § 2506 appeal in the state trial court, his claims in federal court were barred by res judicata); *Maurer v. Leonard*, No. C-2-07-1142, 2008 WL 5076816, at *5 (S.D. Ohio Nov. 21, 2008) (holding that the plaintiff's § 1983 claims seeking money damages were precluded by his previous administrative appeal, even though the administrative appeal at issue did not permit the court to award damages).

In sum, these state-court and federal-court cases establish that the unavailability of the desired relief in a § 2506 appeal does not create a bypass to the application of res judicata. Where the plaintiff can join other claims with his § 2506 appeal, and where those joined claims permit such relief, the strictures of res judicata apply.

The dissent acknowledges that "Ohio courts permit plaintiffs to join a § 1983 claim for damages with a § 2506 appeal," but then concludes that "Ohio courts do not require that plaintiffs join the two actions to avoid claim preclusion." (Dissent p. 18). To the contrary, Ohio law provides that if a plaintiff *can* bring a claim in the first action, he or she is barred from relitigating that claim in the second action. *Grava*, 653 N.E.2d at 228–229 (expressly rejecting the argument that the doctrine of res judicata bars "only those subsequent actions involving the same legal theory of recovery as a previous action," holding instead that the "modern application of the doctrine bars "all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action"). Although, as the dissent points out, two unpublished Ohio cases have found that res judicata does not apply when a party brings a money-damages claim following an administrative appeal, neither case contemplated the

possibility of joining the claim with the administrative appeal. *See Walters v. City of Brecksville*, No. 53660, 1988 WL 38111, at *4–5 (Ohio Ct. App. Apr. 21, 1988); *Bd. of Cnty. Comm'rs v. Coppess*, No. 06-CA-125, 2008 WL 2390846, at *5–6 (Ohio Ct. App. June 13, 2008).

The same problem exists with the federal district-court cases that Moore relies on. *See Negin v. City of Mentor*, 601 F. Supp. 1502, 1504 (N.D. Ohio 1985); *Blue Rock Investments v. City of Xenia*, No. 3:17-CV-409, 2020 WL 1443369, at *4 (S.D. Ohio Mar. 25, 2020). These cases are similarly unpersuasive because they failed to consider what this court made clear in *Carroll v. City of Cleveland*, 522 F. App'x 299, 305–06 (6th Cir. 2013), and what the Ohio courts have long recognized: that plaintiffs may bring claims seeking money damages alongside their administrative appeal in a state-court action. *See id.* (holding that if a plaintiff "follows the proper procedures," he may seek money damages) (collecting cases). A claimant "splitting his claim and trying to litigate in two forums . . . r[uns] the risk of being vulnerable to a defense based on res judicata." *Perry v. Croucher*, 165 F.3d 28, 1998 WL 661151, at *6 (6th Cir. 1998) (table) (internal citation and quotation marks omitted) (holding that the plaintiff could have pursued his § 1983 claim in the state-court litigation). Moore ran that risk here. Because his instant claims were litigated, or could have been litigated, in the state-court action, res judicata applies.

We note that the dissent cites *Ohio Kentucky Oil Corp. v. Nolfi*, 5 N.E.3d 683, 690 (Ohio Ct. App. 2013), for the proposition that if "'formal barriers' exist against a plaintiff in the first action, 'it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first.'" (Dissent p. 18). But the "formal barrier" in *Nolfi* was that a federal court had declined to exercise supplemental jurisdiction over the defendants' state-law claims. *Id.* at 691. The defendants had no control over the federal court's decision. Here, Moore had full control over the claims that he could have brought in the state-court action.

The dissent next argues that the difference in procedures between a § 2506 appeal and a § 1983 action supports an exception to the res judicata doctrine because joining the two proceedings together in the state court would not further a key goal of claim preclusion: promoting the "efficient use of limited judicial . . . time and resources." (Dissent p. 23, quoting

*Grava*, 653 N.E.2d 226, 230).  We find this argument unpersuasive for several reasons.  First, the efficient use of judicial resources is only one goal of claim preclusion.  *Grava*, which barred the plaintiff from relitigating a claim that he could have brought in a prior action, outlined other principles underlying claim preclusion in addition to judicial efficiency.  These principles include "certainty in legal relations and individual rights" and "stability to judgments," *id.*, both of which are present even where the court uses two different sets of procedures to resolve the claims before it.

Second, we believe that combining the different procedures in one case actually conserves judicial resources.  As we have already outlined, Moore is raising in his § 1983 claims the same allegations that he raised his § 2506 Appeal:  that the BZA acted outside the scope of its authority and that the procedures used to issue the certificate were unconstitutional.  The court system surely saves judicial resources when the trial court reviews the same underlying facts and addresses all related arguments simultaneously, even if the standards of review and the procedures used to do so vary.  As the court noted in *D'Amico v. City of Stow*, No. 14131, 1990 WL 66894 (Ohio Ct. App. May 16, 1990)—where, as here, the plaintiff attempted to bring a separate § 1983 action for money damages after pursuing a § 2506 appeal—"judicial economy requires an end."  *Id.* at *6.  We also see judicial economy at work in *Castle Manufactured Homes, Inc. v. Tegtmeier*, No. 98CA0065, 1999 WL 771605 (Ohio Ct. App. Sept. 29, 1999), where the court, relying on the same set of facts, efficiently addressed the plaintiff's § 2506 appeal along with the plaintiff's § 1983 damages claim.

And finally, the dissent extracts its argument from a Wisconsin Supreme Court case, *Hanlon v. Town of Milton*, 612 N.W.2d 44 (Wis. 2000), which is readily distinguishable from the case before us.  (Dissent p. 23–24).  The statute at issue in *Hanlon* differs from the statute at issue here precisely on the issue of procedure.  "Additional fact finding by the circuit court is not permitted" by the Wisconsin statute, and the "court's scope of review is limited to the record produced in the proceeding below."  *Id.* at 49.  By contrast, Moore was permitted to offer additional evidence to the Ohio trial court in his § 2506 Appeal.  *See SMC, Inc. v. Laudi*, 338 N.E.2d 547, 551 (Ohio Ct. App. 1975).  In fact, because the BZA was prohibited from ruling on constitutional issues, the trial court was required to allow Moore to present additional

evidence supporting his claim that the certificate of nonconforming use, and the procedures used to issue the certificate, were unconstitutional. *See id.*; *Grossman v. City of Cleveland Heights*, 698 N.E.2d 76, 78 (Ohio Ct. App. 1997). Any evidence presented on the constitutional issues in Moore's § 2506 Appeal would have undoubtedly also been presented to support his § 1983 claims, had he brought them.

In short, Moore's failure to combine all of his claims in his state-court action bars his attempt to piecemeal them here. The Ohio Supreme Court reached the same conclusion in *Grava*, 653 N.E.2d at 229: "*res judicata* requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." *Grava*, 653 N.E.2d at 229.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

———————————

**DISSENT**

———————————

KAREN NELSON MOORE, Circuit Judge, dissenting. After a careful review of Ohio caselaw, I do not agree with the majority opinion's conclusion that Ohio precedent requires a plaintiff to join a 42 U.S.C. § 1983 claim for damages with an Ohio Revised Code § 2506 administrative appeal ("§ 2506 appeal") to avoid claim preclusion. Although binding precedent does not squarely address the issue, Ohio courts have considered whether res judicata applies to a § 1983 claim filed after a § 2506 appeal and have held that claim preclusion does not bar an Ohio court from considering a § 1983 claim, to the extent that it seeks damages, even where a court already considered or could have considered the same or substantially similar theories in a prior § 2506 appeal. Because claim preclusion in this context is a question of state law, I would accord greater weight to these decisions over unpublished Sixth Circuit opinions. Furthermore, substantive and procedural considerations weigh against requiring the joinder of § 2506 appeals with § 1983 claims for damages in order for a plaintiff to avoid claim preclusion. Due to these concerns, I would not hold that claim preclusion bars the district court from considering Moore's § 1983 claim, to the extent that it seeks damages.

Whether claim preclusion bars Moore's § 1983 claim for damages turns on (1) whether under Ohio law, Moore could have litigated his § 1983 claim in his § 2506 appeal proceeding; and (2) whether under Ohio law a plaintiff's failure to join a § 1983 claim for damages with a § 2506 appeal will preclude the plaintiff from bringing the § 1983 claim in a subsequent proceeding. *See Carroll v. City of Cleveland*, 522 F. App'x 299, 303 (6th Cir. 2013) (noting that a federal court must look to Ohio law to determine whether an Ohio state-court judgment bars a subsequent action).

On the first point, Ohio law clearly limits the kinds of relief a court may grant in a § 2506 appeal. Ohio Rev. Code § 2506.04. In particular, "Section 2506.01 does not empower state courts to award damages for injuries suffered as a result of erroneous administrative decisions." *Carroll*, 522 F. App'x at 305 (quoting *Negin v. City of Mentor*, 601 F. Supp. 1502, 1505 (N.D.

Ohio 1985)); *Bd. of Cnty. Commr's v. Coppess*, No. 06-CA-125, 2008 WL 2390846, ¶ 42 (Ohio Ct. App. June 13, 2008). In contrast, a § 1983 claim is a tort remedy for deprivations of constitutional rights by government action, and the "basic purpose of a § 1983 damages award [is] to compensate persons for injuries caused by the deprivation of constitutional rights." *Carey v. Piphus*, 435 U.S. 247, 254 (1978). Consequently, Moore could not have litigated his § 1983 claim for damages within the § 2506 appeal because the state court could not have awarded Moore § 1983 damages in the § 2506 appeal proceeding.

Moore's inability to seek § 1983 damages in his first action makes claim preclusion inapplicable to his circumstances. Under Ohio precedent, claim preclusion does not apply when a "plaintiff was unable to . . . seek a certain remedy or form of relief in the first action because of . . . restrictions on [the court's] authority to entertain . . . demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action . . . to seek that remedy or form of relief." *Ohio Kentucky Oil Corp. v. Nolfi*, 5 N.E.3d 683, 689 (Ohio Ct. App. 2013) (quoting Restatement (Second) of Judgments § 26(c)(1) (Am. Law Inst. 1982)). "Thus, if 'formal barriers' exist against a plaintiff in the first action, 'it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first.'" *Id.* at 690 (quoting Restatement (Second) of Judgments § 26 cmt. c). Because the "formal barriers" of the § 2506 appeal proceeding prevented Moore from litigating his § 1983 claim for damages within his § 2506 appeal, Ohio caselaw and the principles of claim preclusion instruct us that the exception to the general rule against claim splitting applies. *See Walters v. City of Brecksville*, No. 53660, 1988 WL 38111, at *4–5 (Ohio Ct. App. Apr. 21, 1988).

The majority opinion dismisses this concern because it found that no barriers prevent a plaintiff from joining a § 2506 appeal *with* a § 1983 civil action seeking damages. Therefore, it concludes that Moore's failure to join his § 1983 claim with his § 2506 appeal precludes Moore from now asserting his § 1983 claim. Even though Ohio courts permit plaintiffs to join a § 1983 claim for damages with a § 2506 appeal, Ohio courts do not require that plaintiffs join the two actions to avoid claim preclusion. For example, in *Coppess*, the Ohio court of appeals reviewed the defendants' appeal from summary judgment where the defendants argued, inter alia, that the

trial court erred in dismissing their counterclaim for money damages on the basis of claim preclusion grounds due to their prior § 2506 appeal. *Coppess*, 2008 WL 2390846, ¶ 12. Because the § 2506 appeal involved, inter alia, whether the county board's actions were unconstitutional, the court of appeals concluded that almost all of the defendants' counterclaims and defenses regarding the constitutionality of the board's actions in the civil action "were actually litigated in the prior R.C. 2506 appeal" or "could have been litigated in the prior R.C. 2506 appeal." *Id.* ¶ 37. Consequently, the court of appeals found the defendants' counterclaims and defenses were precluded except for one important exception: the defendants' claim for money damages. *Id.* ¶¶ 38–39. The court held that "the trial court erred in granting summary judgment on res judicata grounds on the second counterclaim to the extent that it sought money damages" because "[d]efendants could not have litigated any claims for money damages in the R.C. 2506 appeal." *Id.* ¶ 42. As *Coppess* makes clear, Ohio courts do not require plaintiffs to join a § 1983 claim, to the extent that they request money damages, with a § 2506 appeal. A plaintiff's failure to join the two actions will not preclude the plaintiff from subsequently bringing a § 1983 claim for damages. *See also Walters*, 1988 WL 38111, at *4–5 (holding same).

The majority opinion points to *D'Amico v. City of Stow*, No. 14131, 1990 WL 66894, at *6–7 (Ohio Ct. App. May 16, 1990), for the proposition that Ohio courts do require parties to join a § 2506 appeal with a § 1983 claim for damages or risk being barred by claim preclusion. Because Ohio's intermediate appellate courts have split on this issue and the Ohio Supreme Court has not decided this question, we can look to "other sources such as 'restatements of law, law-review commentaries, and the rules adopted by other jurisdictions'" to guide our inquiry. *Croce v. New York Times Co.*, 930 F.3d 787, 792 (6th Cir. 2019) (quoting *Mazur v. Young*, 507 F.3d 1013, 1016–17 (6th Cir. 2007)). As discussed *supra*, the Restatement counsels against applying claim preclusion in this scenario, and as discussed *infra*, two other relevant sources also support the Ohio courts' conclusion that claim preclusion is inapplicable under these narrow circumstances.

The majority opinion also relies on this court's unpublished decisions in *Carroll* and *Perry v. Croucher*, No. 97-3033, 1998 WL 661151 (6th Cir. Aug. 31, 1998), to conclude that plaintiffs *may* bring § 1983 claims with § 2506 appeals and that the failure to take advantage of

such opportunity will subject plaintiffs to claim preclusion if they attempt to bring a § 1983 claim after pursuing a § 2506 appeal. Op. at 11, 14. However, in *Carroll*, the § 2506 appeal would have afforded the plaintiffs the monetary relief they demanded, *i.e.*, a return of the fine that they had paid if the court found that the municipality's action was erroneous. *Carroll*, 522 F. App'x at 305. The plaintiffs did not seek "damages for injuries suffered as a result of erroneous administrative decisions," which a § 2506 appeal proceeding could not award. *Negin*, 601 F. Supp. at 1505. Consequently, the court's holding in *Carroll* that res judicata would apply when a plaintiff in a § 1983 claim sought "attorney's fees and declaratory and injunctive relief" did not address whether res judicata would also apply if a plaintiff properly alleged compensatory or punitive damages. *Carroll*, 522 F. App'x at 305–06 (noting that a plaintiff can obtain both declaratory and injunctive relief in a § 2506 appeal; collecting cases where plaintiffs pursued both a § 2506 appeal and federal statutory claims seeking injunctive or declaratory relief). Similarly, this court's decision in *Perry* is also distinguishable. In *Perry*, the court affirmed the dismissal of a § 1983 claim on res judicata grounds and noted that the Ohio court "could have heard Perry's [§ 1983] claim" with his § 2506 appeal. *Id.* at *4–6. However, the court never addressed whether Perry sought damages in connection with his § 1983 claim and whether that would have impacted its analysis. In contrast, the Ohio courts' opinions squarely address the issue. Thus, I consider them to be the more pertinent authority for the case at hand.

Moreover, although I agree that Ohio caselaw makes clear that plaintiffs can join a § 1983 claim for damages with a § 2506 appeal, it is important to note that Ohio courts consider a § 2506 appeal proceeding to be a separate and distinct proceeding from a § 1983 civil action. *See Bolek v. Chardon Bd. of Educ.*, No. 1014, 1982 WL 5670, at *1 (Ohio Ct. App. Oct. 8, 1982) (per curiam) ("[§ 2506 a]ppeals and original actions are, by their appellation, not similar legal proceedings."). When considering a § 2506 appeal, "a court of common pleas . . . 'performs an appellate function,'" *AT&T Commc'ns of Ohio, Inc. v. Lynch*, 969 N.E.2d 1166, 1170 (Ohio 2012) (quoting *Dvorak v. Mun. Civ. Serv. Comm'n of Athens*, 346 N.E.2d 157, 160 (Ohio 1976)), and many of the procedural rules and motions that apply to civil actions do not apply to the proceeding. *See Lupo v. Columbus Board of Zoning Adjustment*, No. 13AP-1063, 2014 WL 2931893, ¶¶ 18–21 (Ohio Ct. App. June 26, 2014). Additionally, a § 2506 appeal "does not contemplate the filing of a complaint, but a notice of appeal." *Bolek*, 1982 WL 5670, at *1.

Thus, for an Ohio court properly to join the two proceedings, a plaintiff must follow the correct procedure to initiate both proceedings. *Compare Castle Manufactured Homes, Inc. v. Tegtmeier*, No. 98CA0065, 1999 WL 771605, at *2, 6 (Ohio Ct. App. Sept. 29, 1999) (considering a claim for damages pursuant to § 1983 that the plaintiffs set forth in a combined notice of appeal and complaint following an adverse decision by the BZA), *with Shewmaker v. Clay Twp. Trs.*, No. 98CA29, 1999 WL 482620, at *1 (Ohio Ct. App. June 30, 1999) (holding that a plaintiff "cannot initiate a Section 1983 action in a notice of appeal filed with a common pleas court; she must file a complaint and comply with Civ.R.6 concerning pleadings and service of process"). And even when an Ohio court joins the two proceedings, the court "proceed[s] separately as to each." *Bolek*, 1982 WL 5670, at *1; *see, e.g.*, *Castle*, 1999 WL 771605, at *2–3; *Nelson v. City of Akron*, No. 14605, 1990 WL 167357, at *1 (Ohio Ct. App. Oct. 31, 1990). Ohio courts clearly treat them as separate proceedings that require different procedures.

Furthermore, the special nature and limits of a § 2506 appeal proceeding make it distinct from the broad federal remedy that is a § 1983 civil action and support a denial of claim preclusion under these circumstances. *See* 18 Charles Alan Wright, Arthur R. Miller, Edward A. Cooper, Federal Practice and Procedure § 4412, p. 307 & n.16 (3d ed. 2016) (discussing claim preclusion issues in the context of special forms of state-court proceedings; "[c]laim preclusion is readily denied when the remedies sought in the second action could not have been sought in the first action, so long as there was good reason to maintain the first action in a court or in a form of proceeding that could not afford full relief."). Ohio courts have long noted the special nature of a § 2506 appeal proceeding. Under Ohio law, a plaintiff can challenge the final order of a board of zoning appeals only by filing a § 2506 appeal.[1] *City of Cleveland v. Sun Oil Co.*, 577 N.E.2d 431, 433 (Ohio Ct. App. 1989). "Absent an appeal to the court of common pleas, the board's decision becomes a final judgment on the merits, erroneous or not, and is *res judicata* to identical future applications." *Id*.

---

[1]However, a plaintiff may bring a § 1983 claim in federal court without challenging the order through a § 2506 appeal because "there is no state judicial exhaustion requirement in § 1983 cases." *Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 555 (6th Cir. 1983), *aff'd and remanded*, 470 U.S. 532 (1985).

The Ohio Supreme Court has also discussed the unique limitations of a § 2506 appeal that distinguish it from a civil action:

> We recognize that under R.C. 2506.03, authorizing the courts of common pleas to hold the hearing on appeal "as in the trial of a civil action," the court may admit and consider new evidence, and the court must weigh evidence on the whole record.
>
> However, while an appeal under R.C. 2506.01 resembles a *de novo* proceeding, it is not *de novo*. There are limits to a court of common pleas review of the administrative body's decision. For example, in weighing evidence, the court may not blatantly substitute its judgment for that of the agency, especially in areas of administrative expertise. Further, new evidence is admitted in an R.C. Chapter 2506 appeal only under certain circumstances . . . .
>
> In reviewing the administrative body's decision, a court of common pleas is authorized to determine whether the agency's decision is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." R.C. 2506.04. The court will then "affirm, reverse, vacate, or modify the order * * *, or remand" the underlying administrative decision under that standard of review specified in the statute. R.C. 2506.04. These standards that a court of common pleas must employ and the dispositions that it must reach are more limited than relief that could be awarded pursuant to a trial, and therefore, the administrative appeal is more akin to an appeal than a trial.

*Lynch*, 969 N.E.2d at 1169–70 (internal quotations and citations omitted); *see also Klein v. Hamilton Cnty. Bd. of Zoning Appeals*, 716 N.E.2d 268, 271 (Ohio Ct. App. June 26, 1998) ("The scope of judicial review of the zoning board's decision [under § 2506], furthermore, is very limited and unusually deferential. The board's decision on such matters is presumed to be valid, and the burden is upon the party contesting the board's determination to prove otherwise.").

In contrast, a civil action involving a § 1983 claim has fewer procedural and substantive limitations. Civil actions involve discovery, the presentation of evidence, and other procedures not guaranteed or allowed in § 2506 appeals. Unlike the limited authority of the court of common pleas in a § 2506 proceeding, when presiding over a civil action the court of common pleas hears the case de novo and has the authority to "weigh conflicting evidence and determine issues of fact" in a manner it is not authorized to do in a § 2506 appeal. *Manning v. Straka*, 189 N.E.2d. 651, 653 (Ohio Ct. App. 1962). A plaintiff also has a right to demand a jury trial in

a § 1983 cause of action.**2**  Additionally, a plaintiff has only thirty days after receiving a final determination from an administrative agency to file a § 2506 appeal.  Ohio Rev. Code § 2505.07. However, in Ohio, a two-year statute of limitations applies to § 1983 claims.  *Browning v. Pendleton*, 869 F.2d 989, 990 (6th Cir. 1989) (en banc).  If Ohio law required a plaintiff to join § 1983 claims for money damages with a § 2506 appeal or face claim preclusion, it would in essence shrink the statute of limitations for a § 1983 claim to the thirty-day period for a § 2506 appeal.  Claim preclusion in this context would frustrate the policies furthered by § 1983.  *See Felder v. Casey*, 487 U.S. 131, 139–40 (1988) (noting that in the § 1983 context the Supreme Court has "disapproved the adoption of state statutes of limitation that provide only a truncated period of time within which to file suit, because such statutes inadequately accommodate the complexities of federal civil rights litigation and are thus inconsistent with Congress' compensatory aims" and instead has "directed the lower federal courts in § 1983 cases to borrow the state-law limitations period for personal injury claims").

The issues discussed above add clarity to the Ohio courts' decision not to require a plaintiff to join a § 1983 claim for damages with a § 2506 appeal in order to avoid claim preclusion, even though the Ohio courts permit a plaintiff to join such claims.  Both substantive and procedural considerations counsel against requiring joinder in this context.  Due to the differences in substance and procedure, joining a § 1983 cause of action to a § 2506 appeal may lengthen and complicate the court's review of the more limited § 2506 appeal, especially because courts and parties may attempt to apply the wrong standards and procedures to the § 2506 appeal.  Consequently, joining these two proceedings together does not "promote[] the efficient use of limited judicial . . . time and resources," *Grava v. Parkman Twp.*, 653 N.E.2d 226, 230 (Ohio 1995), and thus does not further a key objective of claim preclusion.

Notably, in *Hanlon v. Town of Milton*, the Wisconsin Supreme Court reached the same conclusion when considering very similar circumstances.  612 N.W.2d 44 (Wis. 2000).  In *Hanlon*, the Seventh Circuit certified for determination by the Wisconsin Supreme Court a question of law concerning, inter alia, whether under Wisconsin law the failure of a litigant to join the review of an administrative decision with a § 1983 claim for damages that arose from the

---

**2**Moore demanded a jury trial in his complaint in the federal district court.  R. 1 (Complaint) (Page ID #13).

same transaction results in claim preclusion. *Id.* at 47. Like Ohio, Wisconsin law provides for a limited review of a municipal administrative decision by a trial court. *Id.* at 47–48. The review takes place in what Wisconsin calls a "certiorari proceeding," and, like a § 2506 appeal proceeding, a certiorari proceeding provides a litigant with limited forms of relief, which do not include monetary damages. *Id.* at 48. In keeping with the "formal barrier" exception discussed in Section 26 of the Restatement, *see* Restatement (Second) of Judgments § 26 cmt. c, the Wisconsin Supreme Court held that "[b]ecause the issue of monetary damages could not have been litigated in the [certiorari] proceeding," the litigant's § 1983 claim for damages "could not have been brought by him within his [certiorari proceeding]." *Hanlon*, 612 N.W.2d at 48. Thus, claim preclusion did not apply.

The Wisconsin Supreme Court also addressed the reasoning of the majority here that a litigant's failure to *join* a § 1983 claim for damages with a limited administrative appeal proceeding should result in claim preclusion barring a federal court from considering the § 1983 claim for damages. *Id.* The Wisconsin Supreme Court noted that a plaintiff could join a certiorari proceeding with a § 1983 civil action. *Id.* at 50. Nevertheless, it held that a failure to join the claims *did not* bar a plaintiff from pursuing a § 1983 claim for damages even after a plaintiff litigates a certiorari proceeding in which the plaintiff raises the same arguments. *Id.* The court based its conclusions on issues identical to those before us, *i.e.*, the limited nature of the certiorari proceeding as compared to a § 1983 civil action, including the differences in the statutes of limitation for both claims. *Id.* at 48–50.

I find the Wisconsin Supreme Court's unanimous decision to be very persuasive, and it bolsters the Ohio courts' conclusion that claim preclusion is inappropriate in this context. A § 2506 appeal "and a § 1983 action do not fit together within the fundamental structure of bringing one judicial action. The objectives of claim preclusion, therefore, cannot be attained." *Id.* at 49. Thus, I believe that this court should conclude that claim preclusion does not bar Moore's § 1983 claim for damages. Respectfully, I dissent.